STATE OF NORTH CAROLINA v. FRANK ALLEN

No. 58

(Filed 13 October 1971)

Narcotics § 4— unlawful possession of heroin — sufficiency of evidence of possession

    Notwithstanding defendant's contention that he was at a race track in the state of Maryland when police officers uncovered heroin at a certain house in Fayetteville, the State's evidence was sufficient to go to the jury on the issue of defendant's unlawful possession of the heroin, where there was testimony that the public utilities for the house were listed in defendant's name; that an Army identification card and other papers bearing defendant's name were found in the bedroom where the heroin was uncovered; that a 16-year-old boy was selling heroin at the defendant's direction; and that the boy obtained the heroin from the house. G.S. 90-88.

APPEAL by defendant from *Cooper, J.,* 9 September 1970 Session of CUMBERLAND Superior Court.

Defendant was charged in Indictment No. 70 CR 21144 with unlawfully dispensing narcotics, to-wit, heroin, to a minor. He was charged in Indictment No. 70 CR 11390 with unlawfully possessing a quantity of narcotic drugs, to-wit, heroin. The bills were consolidated for trial, and defendant entered a plea of not guilty to each charge. The jury returned a verdict of guilty as to each charge, and defendant gave notice of appeal from sentences imposed on the verdicts. He failed to perfect his appeal within the time allowed, and on 9 April 1971 the Court of Appeals allowed defendant's petition for *certiorari* to perfect his appeal. The case is before this Court pursuant to the general referral order effective 1 August 1970.

*Attorney General Morgan and Assistant Attorney General Harris for the State.*

*Mitchel E. Gadsden for defendant.*

BRANCH, Justice.

Defendant assigns as error only the failure of the court to allow his motions for nonsuit at the close of the State's evidence and at the close of all the evidence. Defendant's motions for nonsuit must be considered in light of all the evidence since he introduced evidence and thereby waived the motions made at the close of the State's evidence. G.S. 15-173; *State v. Prince,* 270 N.C. 769, 154 S.E. 2d 897. Thus, the sole question for decision is whether upon a consideration of all the evidence admitted— whether competent or incompetent—in the light most favorable to the State, there is substantial evidence to support the finding that the offenses charged in the bills of indictment were committed by defendant. *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679. Determination of this question requires a review of the evidence presented.

The State offered evidence which may be substantially summarized as follows:

Detective L. L. Sonberg of the Fayetteville Police Department testified that he had information from a reliable informer that the informer had on 4 May 1970 purchased a transparent capsule containing a white powder from a person at 900 Gillis Street in Fayetteville. The capsule was delivered to the police, and tests showed that the capsule contained heroin. He had in-

State v. Allen

formation that the person who occupied the dwelling at 900 Gillis Street was known as "Snake" and that he was a dealer in narcotics. Based upon this information, Detective Sonberg on the same day obtained a search warrant from Magistrate Julian Mills and proceeded to 900 Gillis Street with the unnamed informer, Berry Hall of the C. I. D., and other military and civilian officers. Upon arrival, Agent Hall and the informer entered the house at 900 Gillis Street, where the informer again purchased one of the capsules. The informer and Agent Hall left, and upon receiving a prearranged signal from Hall indicating the presence of narcotics in the dwelling, Sonberg and the other officers went to the door armed with the search warrant. Detective Sonberg knocked on the door, informed the occupants that they were police officers and that they had a search warrant to search the premises. Someone inside the house tried to prevent their entry, and the door was then forced open. Betty Brinkley, one of the occupants, stated that she was in charge of the house, and Officer Sonberg read the warrant to her and conducted a search of the premises. The search produced 9 capsules from the kitchen and 6 capsules under the mattress of the bed in the master bedroom. (It was later stipulated that the capsules contained heroin.) During the search a wallet containing a United States Army identification card in the name of defendant and several other items bearing defendant's name were found in the master bedroom. At the time of the search the occupants of the house were Betty Brinkley, Leslie Carl Scott, and Lonnie J. Collins. Defendant was not present at the time of the search. On the next day a check at the Public Works Commission showed that the public utility services at 900 Gillis Street were listed in the defendant's name.

Leslie Carl Scott testified that on 4 May 1970 he was 16 years of age and that previous to that date he had on five or six occasions sold "stuff" for defendant. He stated that on 3 May 1970 he received a message that defendant wanted him to come over to the house at 900 Gillis Street. He went there and was told by defendant that he (defendant) was going away for a few days and the "stuff" was under the mattress. Defendant had told him earlier that he wanted him to sell some "scagg." In testifying, Scott used the term "scagg" and heroin interchangeably. He stated that on 4 May 1970 he sold heroin to a man who was accompanied by Agent Hall, and that he had earlier on the same day sold heroin to the same man. The heroin that he sold was supplied by defendant, who had told him to sell it.

State v. Allen

Berry Lee Hall, a U. S. Army criminal investigator, testified that the unnamed informer had previously purchased heroin at 900 Gillis Street and that he was with the informer when he made another purchase of heroin from Leslie Carl Scott just before the search took place. He further testified that as he left the dwelling he, by a prearranged signal, notified the police officers that a purchase of heroin had been made. On cross-examination he stated that he did not see defendant on any of his visits to the dwelling on Gillis Street.

The State offered further evidence tending to corroborate the witness Leslie Carl Scott in the nature of a written statement given to Narcotics Officer Cuyler L. Windham by Scott on 6 May 1970.

Defendant testified in his own behalf and stated that he did not reside at 900 Gillis Street and that when those premises were searched he was at the race tracks in Maryland. He denied having any dealings with Leslie Carl Scott, and averred that he had never dealt in "scagg" or "smack," and that he only had a hearsay knowledge of that commodity. On cross-examination he admitted that he had been convicted of several crimes, beginning with a conviction of larceny in 1952.

Betty Brinkley, testifying for defendant, stated that she did not know that Leslie Carl Scott was selling heroin for defendant. She was present when defendant left on Sunday, 3 May 1970, and that defendant said nothing to Scott about selling anything.

We quote from statutes pertinent to this decision.

G.S. 90-88: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this article."

G.S. 90-111 (c) : "If the offense shall consist of the sale, barter, peddling, exchange, dispensing or supplying of marijuana or a narcotic drug to a minor by an adult in violation of any provision of this article, such person shall upon conviction be punished by a term of not less than ten years nor more than life imprisonment and shall be fined not more than three thousand dollars ($3,000.00) for the first and all subsequent violations of this article, and the

imposition or execution of sentence shall not be suspended, and probation shall not be granted."

G.S. 90-87 (4) : "The following words and phrases as used in this article shall have the following meanings unless the context otherwise requires: . . . . (4) 'Dispense' includes distribute, leave with, give away, dispose of or deliver."

Defendant contends that the evidence offered by the State tending to show that he possessed the drugs is insufficient to repel his motion for nonsuit on the charge of unlawful possession of narcotics.

When does a person possess a narcotic drug? North Carolina authorities are sparse on this point, and the answer to the question is not susceptible to a short and general answer.

We first look to other jurisdictions for authority. In *People v. Galloway*, 28 Ill. 2d 355, 192 N.E. 2d 370, the defendant and his wife were separated and the defendant had departed from their original residence; nevertheless, defendant still received his mail at the original residence, which his wife occupied, and kept articles of personal property there. He had a small package of letters and other correspondence in a dresser drawer in the apartment occupied by his wife, and a search of the premises by the police revealed a package of heroin in the packet of correspondence. Defendant was charged with unlawful possession of narcotic drugs, and in affirming his conviction the Illinois Court stated: "Where narcotics are found on the premises under the control of the defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts which might leave in the minds of the jury a reasonable doubt as to his guilt."

A Federal Court considered the question of constructive possession in the case of *Rodella v. United States*, (9th Cir., 1960), 286 F. 2d 306, and there the defendant was convicted for possession of narcotic drugs which were found hidden in a field not even owned by the defendant. There were other facts from which the court reasoned that the defendant had intended to return to the drugs and exercise dominion and control. In reaching this conclusion, the Court stated: "Constructive possession is that which exists without actual personal . . . dominion over a

State v. Allen

chattel, but with an intent and capability to maintain control and dominion."

Although we have been unable to find a North Carolina case on "all fours" with the question presented by this appeal, this Court has considered constructive possession of other contraband products, possession of which was made criminal by the statute.

In the case of *State v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667, there was evidence showing that defendant's employee went from defendant's store in North Carolina across the road to a barn located in Virginia, and returned to the store with a cup, and that immediately thereafter an officer came into the store, saw the cup on the counter, and a third person picked it up and that the officer thereupon took possession of the cup and discovered that it was filled with intoxicating liquor mixed with coca-cola. The officer never saw the defendant touch the cup or otherwise do anything to control the cup. A subsequent search of the barn revealed several partially empty bottles of whiskey. The defendant was charged and convicted of illegal possession of intoxicating liquor. This Court, finding no error in defendant's conviction, said: "An accused has possession of intoxicating liquor within the meaning of the law when he has both the power and intent to control its disposition or use. The requisite power to control may reside in the accused acting alone or in combination with others."

This Court again considered the constructive possession of liquor in the case of *State v. Myers,* 190 N.C. 239, 129 S.E. 600, in which the defendant had been indicted under the Turlington Act. There the court stated: "If the liquor was within the power of the defendant, in such a sense that he could and did command its use, the possession was as complete within the meaning of the statute as if his possession had been actual. The possession may, within this statute, be either actual or constructive. . . . A person may be in the possession of the article which he has not at the moment about his person."

In support of his position, defendant relies on the authorities contained in the Annotation found at 91 A.L.R. 2d 811. He places emphasis on a statement found in this Annotation to the effect that one "must be shown to have immediate and exclusive control, or to have been placed 'within such close juxtaposition

to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'" This statement is based on a single Texas case, *Hunt v. State,* 158 Tex. Crim. 618, 258 S.W. 2d 320, in which the defendant was convicted of unlawful possession of marijuana upon the testimony of two witnesses that they saw defendant at a lumber pile between two buildings, reaching down under the south end of the pile. He stood there either getting something or putting something away. The witnesses went to the lumber pile and found two tobacco cans full of something that was later determined to be marijuana. The Court of Criminal Appeals affirmed his conviction. Immediately following the above statement, the Annotation continues: "However, the prosecution is not always required to prove sole and exclusive possession. Proof of joint possession is sufficient. Nor is the prosecution always required to prove actual physical possession. Proof of constructive possession is sufficient." And on page 811 of the same Annotation it is stated: "The possession need not always be exclusive; the defendant may share it with one or more others. . . . The defendant may be shown to have had constructive possession by establishing that the drugs involved were subject to his dominion or control."

In instant case there was evidence that the premises where the heroin was found by police officers and where it was being sold were under the control of defendant Frank Allen; that the utilities at that address were listed in defendant's name, and that an Army identification card and other personal papers bearing his name were found in the bedroom. There was testimony that the heroin belonged to defendant and was being sold by the minor Leslie Carl Scott as defendant's agent and at and by his direction. Thus, there is substantial evidence to support a jury finding that the narcotic drug, to-wit, heroin, seized and purchased at 900 Gillis Street was subject to defendant's dominion and control. He had both the power and intent while acting in combination with others to control the disposition and use of the heroin so as to have it in his constructive possession.

The trial judge correctly denied defendant's motion for nonsuit on the charge of illegal possession of narcotic drugs.

Finally, we must consider whether there was evidence sufficient to withstand defendant's motion for nonsuit on the charge of unlawfully dispensing narcotic drugs, to-wit, heroin, to a minor.

Defendant, in his brief, directs his argument only to the charge of unlawful possession of narcotic drugs. He is well advised so to do. The testimony of the witness Scott, standing alone, provides substantial evidence that defendant did "leave with" or "deliver" heroin to a minor. Defendant's own evidence is sufficient to establish that he was an adult.

The trial judge correctly overruled defendant's motion for nonsuit on the charge of unlawfully dispensing narcotic drugs to a minor.

No error.