STATE OF NORTH CAROLINA v. SAMUEL PERRY

No. 125A85

(Filed 5 March 1986)

1. **Criminal Law § 148— prayer for judgment continued—no appealable judgment**

Defendant's purported appeals from verdicts of guilty of conspiracy to manufacture heroin are dismissed since the trial judge, with defendant's express consent given in open court, entered prayer for judgment continued without imposing conditions in either case, and there was therefore no appeal before the Supreme Court.

2. **Narcotics § 4.3— trafficking in heroin by possessing more than 2 grams—constructive possession—sufficiency of evidence**

The trial court properly overruled defendant's motion to dismiss the charge of trafficking in heroin by possessing and transporting 28 grams or more of heroin, since the evidence of defendant's control of an apartment where heroin and implements of manufacturing of heroin were found when considered with the evidence of transportation of 82.9 grams of heroin mixture, was ample evidence of such actual and constructive possession as to support a reasonable inference that defendant had the power and intent to control the disposition and use of the contraband and that he did possess and transport heroin in violation of N.C.G.S. § 90-95(h)(4)(c).

3. **Narcotics § 4— trafficking in heroin by manufacturing heroin—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for trafficking in heroin by manufacturing heroin where it tended to show that defendant was in control of an apartment where heroin and implements of manufacturing heroin were found, and that he was in the apartment only minutes before being apprehended outside the apartment while transporting heroin.

4. **Narcotics § 4— contents of individual packets—heroin—testimony of expert sufficient**

There was no merit to defendant's contention that there was no evidence that there was heroin mixture in each of the 390 separate glassine packets con-

tained in the foil-wrapped package which defendant possessed so as to raise a reasonable inference that he was guilty of trafficking where the testimony of an expert witness in the field of forensic drug chemistry supported a reasonable inference that more than 28 grams of heroin were involved based upon his analysis of a portion of the white powdery substance found in the packets.

**5. Narcotics § 5; Constitutional Law § 83— trafficking in drugs statute—punishment—statute not unconstitutional**

The trial court did not err in failing to dismiss the charge of trafficking in drugs on the theory that N.C.G.S. § 90-95(h)(4) is unconstitutional, since the General Assembly and not the judiciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes, and a scheme which punishes more severely the possession of a small amount of heroin when mixed with a large amount of legal materials than possession of a smaller amount of pure heroin has a rational relation to a valid State objective, that is, the deterrence of large-scale distribution of drugs.

**6. Narcotics § 1.3— trafficking by possessing, manufacturing and transporting heroin—three separate offenses**

Possessing, manufacturing, and transporting heroin are separate and distinct offenses, and when a person commits any one of these offenses which involves four grams or more of heroin, he is guilty of trafficking; therefore, defendant may be convicted and punished separately for trafficking in heroin by possessing 28 grams or more of heroin, trafficking in heroin by manufacturing 28 grams or more of heroin, and trafficking in heroin by transporting 28 grams or more of heroin even when the contraband material in each separate offense is the same heroin.

**7. Arrest and Bail § 3.4; Criminal Law § 75.1— warrantless arrest—probable cause—admissibility of defendant's admissions**

Officers had probable cause to believe that defendant was committing a felony and his warrantless arrest was therefore legal so that the trial court was not required to suppress his statements of admissions made to police officers in the course of the arrest.

**8. Arrest and Bail § 9.2— bond increased during trial—no error**

The trial judge did not err by increasing defendant's bond during the course of the trial where the judge noted defendant's misconduct in the presence of jurors and the court; he was aware that defendant faced serious punishment if convicted and that defendant had just lost the aid of one of his prime witnesses; and the court expressed doubt as to the sufficiency of the bond to bring defendant to court until a final determination of his guilt or innocence. N.C.G.S. § 15A-534(e)(2).

**9. Criminal Law § 98.3— handcuffed defendant seen by jurors—defendant not prejudiced**

The trial court did not err in denying defendant's motion for a mistrial because a juror or jurors saw him in handcuffs or in custody of an officer after he was in custody because of his failure to post the bond ordered by the trial

judge, since defendant was not shackled during the course of the trial but was routinely handcuffed when carried to and from the jail; there was evidence that a juror had inadvertently seen defendant handcuffed and that others may have seen him in the custody of an officer; when defense counsel moved for a mistrial, the judge conducted an extensive hearing and found no misconduct or prejudice to defendant; the judge then denied the mistrial but advised defense counsel that he would be willing to inquire of all the jurors if they saw anything amiss; and defense counsel indicated that he desired no further inquiry.

**10. Criminal Law § 138.13; Narcotics § 5— severity of sentence**

Where a statute mandates that an offender be punished as a felon of one of the classifications of N.C.G.S. § 15A-1340.4(f) but sets a minimum sentence greater than the presumptive sentence established for the appropriate class of felony in subsection (4), the minimum sentence set out in the criminal statute becomes the presumptive sentence for purposes of sentencing under the Fair Sentencing Act; therefore, in order to impose a sentence in excess of the minimum prescribed by N.C.G.S. § 90-95(h)(4)(c) [45 years and $500,000], it is necessary that the trial judge make proper findings of factors in aggravation and mitigation and find that the aggravating factors outweigh any mitigating factors.

**11. Criminal Law § 138.29; Narcotics § 5— trafficking in heroin—severity of sentence—specific intent to sell—defendant's bad character and reputation—appropriate aggravating factors**

In a prosecution for trafficking in heroin by possessing, transporting, and manufacturing 28 grams or more of heroin, the trial court properly found as aggravating factors that defendant had the specific intent to sell the heroin which he possessed, since intent to sell is not an element of manufacturing, transporting or possessing 28 grams or more of heroin, and that defendant had a bad character and reputation for trafficking in drugs and handling stolen goods, since defendant's bad character related in part to his activities in the illegal drug trade and thus bore a reasonable relationship to the purposes of sentencing by demonstrating his increased culpability.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment of *Brannon, J.*, entered at the 17 October 1984 Criminal Session of WAKE County Superior Court, imposing a life sentence and a fine of $500,000 upon a jury verdict of guilty of trafficking in heroin by possessing 28 grams or more of heroin.

Defendant was also convicted of conspiracy to possess 28 grams or more of heroin, conspiracy to manufacture 28 grams or more of heroin, trafficking in heroin by transporting 28 grams or more of heroin, and trafficking in heroin by manufacturing 28 grams or more of heroin. Defendant received sentences of 45 years in prison on the verdict of manufacturing 28 grams or more of heroin, and 45 years in prison on the verdict of guilty of

transporting 28 grams or more of heroin. The court also imposed a $500,000 fine in each of the above trafficking cases. Prayer for judgment was continued, without condition, in both of the conspiracy cases. We allowed bypass of the Court of Appeals in these cases.

The State's evidence tended to show that at about 11:20 a.m. on 9 June 1982, Detectives J. H. Johnson and E. T. Bert, of the Raleigh Police Department, Drug and Vice Division, observed Edell Willis (hereinafter Willis) park a yellow Cadillac in the parking lot of the Woodland Apartment complex and enter Apartment 823-C carrying a small brown paper bag.

At about 1:30 p.m. on the same day Willis was seen by Detectives Johnson, Bert, and Weatherspoon leaving Apartment 823-C Suffolk Boulevard with nothing in his hands. He entered the Cadillac, drove out of the parking lot, and turned right onto Suffolk Boulevard. After traveling a short distance, Willis was stopped by Detectives O'Shields and O. T. Perry. About ten minutes after Willis left Apartment 823-C, defendant was seen leaving the same apartment wearing a dark hat and carrying a silver, shiny package which appeared to be six to eight inches long and three to four inches wide. Defendant left the parking lot in a gold and white pickup truck and turned right onto Suffolk Boulevard. His truck came to an abrupt halt between the apartment complex and where Willis's vehicle had been stopped by the police officers. He then backed down Suffolk Boulevard, stopped and abruptly turned left into a driveway between dwellings 810 and 812 on Suffolk Boulevard. Defendant was out of sight of the police officers for just a few seconds.

Sergeant Perry pursued defendant as he backed down Suffolk Boulevard and observed him behind 810 Suffolk Boulevard closing the driver's door of the truck with his elbow. Sergeant Perry then saw defendant back his truck straight across the driveway and into the back of the residence of 812 Suffolk Boulevard where the officer blocked defendant's vehicle with his police car. Defendant asked Sergeant Perry to retrieve his hat for him indicating that it was on the ground behind 810 Suffolk Boulevard. Defendant then told Sergeant Perry that he wanted to talk to "Shield." When Sergeant Perry responded that Detective

O'Shields was not at the scene, defendant indicated that Detective O'Shields was in fact approaching.

When he arrived, Detective O'Shields advised defendant of his rights and asked him if he wanted to talk. Defendant replied, "I don't want to take the fall for all of somebody else's s---." O'Shields then said, "Are you talking about Edell?" Defendant asked O'Shields, "What will I get out of this if I talk to you?" O'Shields then told defendant that he would give the district attorney any information that he released to him, but that he could not guarantee him anything. Defendant said that he understood, but added, "I just don't want to take the fall for everybody else's mess." Defendant was asked, "What did you do with the package you carried out of the apartment?" Defendant replied, "How will you help me if I tell you that?" Before O'Shields answered, a detective located the package some yards away from the truck in some bushes. O'Shields then told defendant that they had found it, and asked, "Do you have anything else you want to say?" Defendant said, "No, but are they going into the apartment?" O'Shields replied, "They are going to obtain a search warrant."

Defendant told Detective O'Shields that Apartment 823-C belonged to his girlfriend, that he had a key to it, and that Willis had left an ounce or so under the bed in the apartment. He asked the detective not to tear up the apartment. Defendant said that he had nothing to do with the drugs and that his girlfriend was not involved. He further stated that Willis wanted to use the place. Detective O'Shields asked defendant if, other than the package he brought out of the apartment and the package he stated was under the bed, that was all he (defendant) knew about being in the apartment. Defendant answered that it was.

Further evidence for the State tended to show that Detective Weatherspoon, while searching behind 810 Suffolk Boulevard, found a shiny, foil-wrapped package in the bushes, free of dirt, moisture and debris. Detectives Johnson, Bert, and Weatherspoon were of the opinion that the foil-wrapped package in the honeysuckle bushes was the same package they had observed in the left hand of defendant when he left Apartment 823-C.

When the package was opened, the detectives found 390 glassine envelopes, each envelope or bindle containing a small amount of white powder which was uniform in color, texture, and ap-

pearance. J. F. Casale, an expert in the area of forensic chemistry, analyzed a sample of the white powder and found it to be a mixture of heroin and mannitol. The aggregate mixture of all the bindles was 82.9 grams.

The detectives also found a Carolina Power and Light bill and a Southern Bell bill in defendant's name with the address 823 Suffolk Boulevard on each. A key was found on defendant's key chain that fit the lock on Apartment 823-C Suffolk Boulevard. They also found $7,440 in his sock.

On 9 June 1982 detectives obtained a warrant to search Apartment 823-C Suffolk Boulevard. In the bedroom under the bed they found two large green plastic bags containing numerous items which the officers recognized as items used in packaging and repackaging heroin. They found mannitol, a common agent used in cutting heroin, rubber gloves, boxes with empty bindles or envelopes, a strainer, album covers, aluminum foil, scotch tape, rubber bands, measuring spoons and other items. They also found a plastic bag containing a white powder which was properly secured and later analyzed by expert witness J. F. Casale who found the white powder to be 26.3 grams of virtually uncut heroin.

Defendant offered evidence tending to show that he sometimes stayed at his girlfriend's apartment on Suffolk Boulevard, that he had known Willis since childhood, and that he had often done work on Willis's car. On 9 June 1982 Willis was in the neighborhood of Suffolk Boulevard and saw defendant's truck parked in front of the apartment building. Willis entered the apartment and they visited for a period of time. Defendant and Willis did nothing in the apartment except drink coffee and talk about general things and in particular about defendant putting a new engine in Willis's El Camino. Willis left the apartment. When defendant later left the apartment, he was carrying some bills and an envelope in his hand. Defendant drove into a driveway across Suffolk Boulevard from the apartment complex to check out an old car he was thinking about buying. He backed his vehicle near the old car and was there blocked in by the police and arrested. He was questioned by an officer who identified himself as O'Shields. He did not know O'Shields prior to this questioning. O'Shields asked defendant about a package and he responded that

he did not know what he was talking about. He made no other statement to O'Shields, but stated that he saw an officer find a package, which appeared to be wrapped in smooth aluminum foil, in the woods.

After being taken to jail, he was at some time placed in the same area with Willis, and he asked Willis about the package that the police found in the woods. Willis then told defendant that he had hidden the package in the woods across Suffolk Boulevard from the apartments the night before and was in the neighborhood to get it on 9 June when he saw defendant's truck and decided to stop by the apartment. Willis said that when he left the apartment he intended to drive around the block once or twice to see if the coast was clear but that he was stopped by the police before he had gotten very far.

Defendant was in jail when the apartment was searched, and he testified that he knew nothing about any of the items that police had testified were seized in the apartment. Defendant and his girlfriend, Linda Fay Watson, each had keys to and access to the apartment. He further testified that he had never conspired with Willis or had anything to do with controlled substances.

*Lacy H. Thornburg, Attorney General, by William F. Briley, Assistant Attorney General, for the State.*

*Currie, Pugh and Joyner, by Irving Joyner, Attorney for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial judge's denial of his motion to dismiss all charges at the close of all the evidence.

[1] We first consider the conspiracy charges. The indictment in Case No. 82CRS36668 charges that defendant conspired with Edell Willis to possess 28 grams or more of heroin on 9 June 1982. The indictment in Case No. 82CRS36670 charges that defendant conspired to manufacture with Edell Willis 28 grams or more of heroin on 9 June 1982.

Defendant contends that the State failed to offer sufficient evidence of either of these charges to survive his motions to dismiss. We do not reach this argument since Cases Nos. 82CRS-

36668 and 82CRS36670 are not before us for decision. Upon the jury verdict of guilty in Case No. 82CRS36668 charging that defendant conspired with Edell Willis to possess 28 grams or more of heroin on 9 June 1982, the trial judge entered the following order:

ORDER—82CRS36668

Offense: Conspiring with Edell Willis to possess 28 grams or
    more of heroin on June 9, 1982

Attorney for State: Evelyn Hill
Attorney for Defendant: Thomas Loflin

PLEA: [X] Not Guilty
VERDICT: [X] Guilty

   It is Ordered that Prayer for Judgment be continued, with the express consent of the defendant in open court, from term to term and session to session of the Wake County Superior Court for a maximum term of five (5) years from this date unless the Solicitor for the State in his/her unfettered and unbridled discretion prays judgment in the next five (5) years.

Date: October 24, 1984
Name of Presiding Judge: Hon. Anthony M. Brannon

        Signature of Presiding Judge
        s/ ANTHONY BRANNON

   An identical order was entered in Case No. 82CRS36670 upon the jury verdict of guilty of conspiracy to manufacture with Edell Willis 28 grams or more of heroin on 9 June 1982.

   In *State v. Pledger*, 257 N.C. 634, 127 S.E. 2d 337 (1962), we find the following:

   Where prayer for judgment is continued and no conditions are imposed, there is no judgment, no appeal will lie, and the case remains in the trial court for appropriate action upon motion of the solicitor.

*Id.* at 638, 127 S.E. 2d at 340.

   In instant cases the trial judge, with defendant's express consent given in open court, entered prayer for judgment continued

without imposing conditions in either of the conspiracy charges. Therefore there is no appeal before us in cases 82CRS36670 and 82CRS36668. The purported appeals in each of these cases are dismissed.

[2]  By his next assignment of error, defendant argues that the trial judge erred in failing to allow his motion to dismiss, made at the close of all the evidence, the charges of trafficking in heroin by possessing and transporting heroin. Defendant argues that there was insufficient evidence to support a reasonable inference that he possessed or transported 28 grams or more of heroin.

N.C.G.S. § 90-95(h)(4) in part provides:

(4) Any person who sells, manufactures, delivers, transports, or possesses *four grams* or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as 'trafficking in opium or heroin' and if the quantity of such controlled substance or mixture involved:

. . . .

c. Is 28 grams or more, such person shall be punished as a Class C felon and shall be sentenced to a term of at least 45 years in the State's prison and shall be fined not less than five hundred thousand dollars ($500,000).

(Emphasis added.)

We particularly note that this section penalizes possession of 4 grams or more of any mixture containing heroin without regard to the percentage of heroin in the mixture.

Defendant's motion to dismiss must be considered in light of all the evidence introduced by the State as well as that introduced by defendant. N.C.G.S. § 15-173 (1983), N.C.G.S. § 15A-1227 (1983). Thus, the question presented is whether upon consideration of all the evidence, whether competent or incompetent, in the light most favorable to the State, there is substantial evidence that the crime charged in the bill of indictment was committed and that defendant was a perpetrator of that crime. *State v. Rid-*

*dle*, 300 N.C. 744, 268 S.E. 2d 80 (1980); *State v. Scott*, 289 N.C. 712, 224 S.E. 2d 185 (1976).

It is well settled in this jurisdiction that in a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials. Proof of constructive possession is sufficient and that possession need not always be exclusive. *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983); *State v. Baxter*, 285 N.C. 735, 208 S.E. 2d 696 (1974); *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972); *State v. Allen*, 279 N.C. 406, 183 S.E. 2d 680 (1971).

In *Allen* defendant was charged with possessing a quantity of heroin. The State offered evidence tending to show that the utilities for the house in which the heroin was found were listed in defendant's name, that an Army identification card and other papers bearing defendant's name were found in the bedroom of the house where the heroin was discovered, and that heroin was being sold by a sixteen-year-old boy at defendant's direction. Defendant testified that he did not reside at the residence where the heroin was found and that he had no dealings with the drug or the minor who allegedly was selling it. Holding that the trial court correctly denied defendant's motion for nonsuit, this Court quoted, with approval, from *People v. Galloway*, 28 Ill. 2d 355, 358, 192 N.E. 2d 370, 372 (1963), *cert. denied*, 376 U.S. 910, 11 L.Ed. 2d 608 (1964), the following:

> 'where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury * * * a reasonable doubt as to his guilt.'

*State v. Allen*, 279 N.C. at 410, 183 S.E. 2d at 683.

We again considered possession of contraband in *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706, and find there language pertinent to a decision of the question before us. We quote:

> An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power

and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. Also, the State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused 'within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'

281 N.C. at 12-13, 187 S.E. 2d at 714 (citations omitted).

Defendant relies heavily on *State v. Chavis*, 270 N.C. 306, 154 S.E. 2d 340 (1967). There defendant was convicted of felonious possession of marijuana. The State offered evidence tending to show that officers followed him and a companion along a street and through a vacant lot. They observed defendant and his companion in conversation about a minute and lost sight of him for just a few seconds. When defendant was first observed by the officers he was wearing a hat, but when he came back toward the officers, he was bareheaded. He was arrested and a search of his person did not reveal any contraband materials. In the vacant lot officers later found a hat, similar to the one worn by defendant, containing a quantity of marijuana. We held this evidence to be insufficient to overcome a motion for judgment as of nonsuit.

Instant case differs from *Chavis* in that defendant was alone from the time he was seen leaving the apartment carrying the silver-wrapped package until it was found in some bushes near his truck. In addition, there was evidence which would support an inference that defendant was either in joint or exclusive control of the apartment at 823-C Suffolk Boulevard from which defendant had departed carrying the silver-colored package and in which 26.3 grams of virtually uncut heroin, together with implements for the manufacturing of heroin, were found. There was also evidence of admissions by defendant that he knew some heroin was in the apartment and that his girlfriend knew nothing about it. In *Chavis* the only evidence connecting defendant to the marijuana was that it was found in a hat identical to one he had been seen wearing just a short time before his arrest.

We hold that the evidence of defendant's control of the apartment at 823-C Suffolk Boulevard, where heroin and implements of manufacturing of heroin were found, when considered with the evidence of transportation of 82.9 grams of heroin mixture is ample evidence of such actual and constructive possession as to support a reasonable inference that defendant had the power and intent to control the disposition and use of the contraband and that he did possess and transport heroin in violation of N.C.G.S. § 90-95(h)(4)(c).

The trial judge correctly overruled defendant's motion to dismiss the charge of trafficking in heroin by possessing and transporting 28 grams or more of heroin.

[3]  Defendant next argues that there was not sufficient evidence to carry the charge of trafficking in heroin by manufacturing heroin to the jury and that his motion to dismiss should have been allowed.

N.C.G.S. § 90-95(a)(1) in part provides:

(a) Except as authorized by this Article, it is unlawful for any person:

(1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance.

N.C.G.S. § 90-87(15) defines "manufacture" as

the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether directly or indirectly, artificially or naturally, or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and 'manufacture' further includes any packaging or repackaging of the substance or labeling or relabeling of its container except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use. . . .

Defendant was specifically charged in the bill of indictment with cutting and packaging heroin.

In addition to the previously cited authorities, we find *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984), to be instructive.

There the defendant was found in an apartment with two other persons. He was standing within a foot of a table containing two plastic packages of a substance later determined to be cocaine, plastic sandwich-type bags, plastic bags containing a green vegetable substance, wire ties, a chemical used to absorb water, aluminum foil, a single-edged razor blade, and a plastic straw which is commonly used to inhale cocaine through the nose. The apartment was leased to defendant's brother and was used as a "drink house" rather than a dwelling. Defendant had on his person a key to the apartment and $1700 in cash. During recent periods of police surveillance, defendant had been at the apartment where the contraband materials were found. Defendant was charged and convicted of packaging and repackaging cocaine. On appeal this Court held that there was ample evidence that defendant was engaged in manufacturing the controlled substance.

*Brown* and instant case are factually very similar, the most substantial variance being that in *Brown* defendant was actually within reach of the contraband materials and the implements used in the manufacturing process when the officers first observed him.

We therefore hold that there was ample evidence to give rise to a reasonable inference that defendant did manufacture heroin by packaging the controlled substance.

[4] Defendant next contends that the trial court erred by permitting the offenses of trafficking in heroin to be submitted to the jury. It is defendant's position that there was no evidence that there was heroin mixture in each of the 390 separate glassine packets contained in the foil-wrapped package so as to raise a reasonable inference that he was guilty of trafficking.

In order to prove the offense of trafficking, the State must prove that the accused sold, manufactured, delivered, transported, or possessed "four grams or more of . . . heroin, or any mixture containing such substance." N.C.G.S. § 90-95(h)(4) (1985). Upon conviction of trafficking, if it is found that the quantity of such controlled substance or mixture containing the controlled substance involved is 28 grams or more, a defendant shall be punished as a Class C felon. Said punishment shall be imprisonment for at least 45 years and imposition of a fine of not less than $500,000. N.C.G.S. § 90-95(h)(4)(c) (1985). The maximum punishment

for a Class C felony is imprisonment "up to fifty years, or by life imprisonment, or a fine, or both imprisonment and fine." N.C.G.S. § 14-1.1 (1981).

Having decided that there was enough evidence that defendant possessed, transported, and manufactured heroin, we will confine our consideration of the amount of heroin involved to the testimony of the expert witness, John Casale, who was admitted as an expert witness in the field of forensic drug chemistry. Mr. Casale identified State's Exhibit 55, a plastic bag containing 89.2 grams of white powder, by his initials and a case number. He stated that he tested the white powder by emptying the bag and noting that it was of a uniform mixture before beginning his analysis. He described his various methods of examination of different small portions from the whole. After performing various tests, he concluded that the white powdery substance contained a small amount of quinine, a large amount of mannitol, and approximately three percent heroin.

The witness Casale also identified State's Exhibit 57, another plastic bag containing a white powdery substance, by the marking of his initials and an assigned case number. The contents of the bag weighed 26.3 grams. He did tests similar to those which he performed on State's Exhibit 55 and concluded that the powdery substance was virtually uncut heroin. He detected no mannitol or quinine in the substance but did find a small amount of caffeine.

It is well established that an expert chemist may give his opinion as to the whole when only a part of the whole has been tested. *State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976); *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970). We note that the testimony of the expert witness was either admitted on direct examination without objection or was elicited on cross-examination.

The testimony of the expert witness when considered in conjunction with the State's evidence as to possession, manufacturing, and transporting is more than ample to support a reasonable inference of trafficking and that defendant engaged in trafficking more than 28 grams of heroin.

[5] Defendant assigns as error the failure of the trial judge to dismiss the charge of trafficking in drugs on the theory that N.C.G.S. § 90-95(h)(4) (hereinabove quoted in pertinent part) is un-

constitutional. He acknowledges that the Court of Appeals, in *State v. Willis*, 61 N.C. App. 23, 300 S.E. 2d 420, *affirmed and modified on other grounds*, 309 N.C. 451, 306 S.E. 2d 779 (1983), has held this section of the statute to be constitutional. However, without citation of case authority, he asks that *Willis* be over-ruled on grounds that the statute violates the law of the land pro-vision of article I, § 19, of the North Carolina Constitution and the due process and equal protection clauses of the United States Constitution.

Defendant also argues that the imposition of the mandatory minimum sentence and fine as required by enactment of the Gen-eral Assembly violates the separation of powers clause in the North Carolina Constitution as well as the due process and equal protection clauses of the United States Constitution. We disagree.

It is well settled that the General Assembly and not the judi-ciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes. The legislature alone can prescribe the punishment for those crimes. *State v. Jer-nigan*, 279 N.C. 556, 184 S.E. 2d 259 (1971); *State v. Roseboro*, 276 N.C. 185, 171 S.E. 2d 886 (1970), *death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 860 (1971); *State v. Hill*, 276 N.C. 1, 170 S.E. 2d 885 (1969), *death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 860 (1971).

Defendant avers that the scheme of punishment provided for in this statute is irrational and violative of the equal protection and due process clauses of the United States Constitution because the scheme would punish more severely the possession of a small amount of heroin when mixed with a large amount of legal materi-als than for a smaller amount of pure heroin. He contends that this is irrational because it encourages the possession of pure heroin rather than a nonlethal diluted dosage. We find this argu-ment to be without substance. The purpose of the statute is to prevent trafficking in controlled substances. The mixing and pack-aging into dosage containers of a controlled substance with other noncontrolled substances indicates an intent to distribute the con-trolled substance on a large scale. Large scale distribution natu-rally reaches more people who may be harmed by the drugs. Thus, the imposition of harsher penalties for the possession of a mixture of controlled substances with a larger mixture of lawful

materials has a rational relation to a valid State objective, that is, the deterrence of large scale distribution of drugs. *See State v. Tyndall*, 55 N.C. App. 57, 284 S.E. 2d 575 (1981); *State v. Willis*, 61 N.C. App. 23, 300 S.E. 2d 420.

We find no constitutional infirmity in the statute and therefore hold that the trial judge properly denied defendant's motion to dismiss the charge of trafficking in drugs as being unconstitutional.

Defendant next contends that the trial judge erred by refusing to direct the State to elect between prosecuting defendant for trafficking in heroin and the offenses of possessing, manufacturing and transporting heroin. Defendant asserts that the denial of his motion subjected him to double jeopardy. He seems to take the position that the offenses of trafficking in heroin by possessing, manufacturing, and transporting heroin are lesser included offenses of a single offense of trafficking in heroin. Defendant's contention is without merit.

In *State v. Anderson*, 57 N.C. App. 602, 292 S.E. 2d 163, *disc. rev. denied*, 306 N.C. 559, 294 S.E. 2d 372 (1982), an opinion by Clark, J., we find an excellent discussion of the history and intent of the legislature in enacting Chapter 1251 of the 1979 Session Laws entitled "An Act to Control Trafficking in Certain Controlled Substances." We quote from that opinion:

> Prior to the enactment of Chapter 1251 of the 1979 Session Laws, the majority of the substantive offenses involving illegal drug activities were set forth in G.S. 90-88 before passage of a 1973 amendment, and thereafter in G.S. 90-95 (a)(1), (2) and (3), which made it unlawful for any person to manufacture, sell, or deliver, possess or possess with intent to manufacture, sell or deliver, a controlled substance. These same statutory sections are now a part of the new G.S. 90-95 with the 1979 amendments [subsections (h) and (i)] which provide for comprehensive graduations in the scale of mandatory sentences and fines for the sale, manufacture, delivery, transportation or possession of substantial amounts of certain illicit drugs.

> It is clear that the 1979 amendments to G.S. 90-95 by the addition of subsections (h) and (i) are responsive to a growing

State v. Perry

concern regarding the gravity of illegal drug activity in North Carolina and the need for effective laws to deter the corrupting influence of drug dealers and traffickers. Prior to the enactment of the 1979 amendment, the provisions of G.S. 90-88 before 1973 and thereafter G.S. 90-95(a)(1), (2), and (3), have been interpreted by the courts of North Carolina. The distinct acts denounced by the statute (manufacture, sell, deliver, possess) have been held to constitute separate and distinct offenses. *State v. Aiken*, 286 N.C. 202, 209 S.E. 2d 763 (1974); *State v. Thornton*, 283 N.C. 513, 196 S.E. 2d 701 (1973); *State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973); *State v. Salem*, 50 N.C. App. 419, 274 S.E. 2d 501, *disc. rev. denied*, 302 N.C. 401, 279 S.E. 2d 355 (1981); *State v. Brown*, 20 N.C. App. 71, 200 S.E. 2d 666 [1973], *cert. denied*, 284 N.C. 617, 202 S.E. 2d 274 (197[4]). The same statutory interpretation has been made in other jurisdictions. 28 C.J.S. *Drugs and Narcotics Supplement* § 171 (1974).

The cases cited and others not cited, which have established the rule of law that it was the intent of the legislature in enacting previous and current statutes similar to the statute in question to create separate and distinct crimes for the various acts denounced, must be given substantial weight in interpreting the similar statute [G.S. 90-95(h) and (i)] on which the indictments are based.

We find the words 'guilty of a felony . . . known as "trafficking in marijuana" ' relates primarily to the preceding words '50 pounds (avoirdupois) of marijuana,' and the use of the word felony in singular form refers to the singular crime known as 'trafficking in marijuana,' a crime consisting of any one or more of the denounced acts, any one of which is a separate crime. We hold that under G.S. 90-95(h) if a person engages in conduct which constitutes possession of in excess of 50 pounds of marijuana as well as conduct which constitutes manufacture of in excess of 50 pounds of marijuana, then the person may be charged with and convicted of two separate felonies of trafficking in marijuana.

57 N.C. App. at 605-06, 292 S.E. 2d at 165-66.

[6] We therefore hold that possessing, manufacturing, and transporting heroin are separate and distinct offenses. Further,

when a person commits any one of these offenses which involves 4 grams or more of heroin, he is guilty of trafficking. Therefore, defendant may be convicted and punished separately for trafficking in heroin by possessing 28 grams or more of heroin, trafficking in heroin by manufacturing 28 grams or more of heroin, and trafficking in heroin by transporting 28 grams or more of heroin even when the contraband material in each separate offense is the same heroin.

We hold that the trial judge did not err in denying defendant's motion that he direct the State to elect between prosecuting defendant for trafficking in heroin and the offenses of possession, manufacturing and transporting heroin.

[7] Defendant next contends that Judge Bowen erred in denying his pretrial motion to suppress all evidence relating to statements made by him to police officers. Relying on *Brown v. Illinois*, 422 U.S. 590, 45 L.Ed. 2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed. 2d 441 (1963); and their progeny, defendant argues that his arrest was illegal and therefore any statements or admissions as a result of this arrest should be suppressed as "fruits of the poisonous tree." He contends that since there was no probable cause for arrest the warrantless arrest was illegal. Unquestionably defendant was arrested without a warrant, therefore the legality of his arrest is governed by N.C.G.S. § 15A-401(b) which provides:

(b) Arrest by Officer Without a Warrant.—

　　(1) Offense in Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence.

　　(2) Offense Out of Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe:

　　a. Has committed a felony. . . .

Resolution of this assignment of error depends upon whether, at the time the officers arrested defendant without a warrant, they had probable cause to believe that he had committed a felony or that he had committed a criminal offense in their pres-

ence. In this connection, Judge Bowen made findings consistent with the facts hereinabove set out as well as the following additional findings:

2. E. T. Bert and J. H. Johnson, members of the Raleigh Police Department for over nine years and Detectives for over a year and a half, who had intensive training, education, and experience in drug identification and drug investigation, had participated in undercover drug campaigns, and had been investigating heroin trafficking in the Raleigh area for over a year, began to receive information in December of 1981 from a confidential informant regarding the involvement of Sam Perry and Edell Willis in heroin trafficking in Southeast Raleigh.

3. This informant was known to both Detectives and had given information in the past which had led to arrests, seizures of drugs, and convictions for drug violations. The informant had never given the detectives false information and all information given had proven reliable. The information had been given over a period of nine months by the informant. The informant was familiar with the customs and practices of drug dealers and knew what heroin looked like.

4. The informant told Detectives Bert and Johnson that he had personal knowledge that Edell Willis had a storage house used for purposes of cutting, packaging and storing heroin for distribution, that this storage house was located at 823-C Suffolk Boulevard, in Raleigh, and that Samuel Perry meets there with Edell Willis to cut, package, and distribute the heroin.

. . . .

7. In the 24 hour period prior to the afternoon of June 9, 1982, the confidential informant told Detectives Bert and Johnson that Edell Willis and Sam Perry were in possession of a large amount of heroin, enough for a two-week supply of heroin sales, and that they would be going to 823-C Suffolk Boulevard to cut and package the heroin for distribution. The informant further stated that he had previously seen Edell Willis with a large quantity of heroin at 823-C Suffolk Boulevard, that Edell Willis usually carries the uncut heroin to

823-C Suffolk Boulevard in a brown paper bag, and that on this occasion Edell Willis would be carrying the heroin in a brown paper bag.

8. Based upon the informant's information, prior information and prior surveillance, Detectives Bert and Johnson set up surveillance of 823-C Suffolk Boulevard in the early morning hours of June 9, 1982.

Upon these findings, Judge Bowen concluded:

2. Detectives Bert and Johnson had probable cause to believe that Samuel Perry was committing a felony violation of the North Carolina Controlled Substances Act and had probable cause to arrest him for that felony offense.

3. Detective Perry, acting under the direction of Detectives Bert and Johnson, made a valid arrest of Samuel Perry for possession of heroin.

4. The search of the person of Samuel Perry and the search of the passenger area of the truck in which he was arrested were incident to a valid arrest upon probable cause and were therefore reasonable and lawful.

. . . .

6. Samuel Perry was properly advised of the appropriate Miranda Warnings and knowingly and intelligently waived those rights before making statements.

7. Samuel Perry knowingly, intelligently, freely and voluntarily, without threats, promises, or coercion, made statements to law enforcement officers subsequent to his valid arrest upon probable cause. After indicating at one point that he had nothing more to say about the heroin in the foil package, he freely and voluntarily initiated further conversation with law enforcement officers and engaged in a conversation during which he answered further questions knowingly, intelligently, freely and voluntarily.

He thereupon denied defendant's motion.

In *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973), we find the following statement:

An arrest is constitutionally valid when the officers have probable cause to make it. Whether probable cause exists depends upon 'whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' *Beck v. Ohio*, 379 U.S. 89, 13 L.Ed. 2d 142, 85 S.Ct. 223 (1964).

*Id.* at 207, 195 S.E. 2d at 505.

It is well settled that a silent record supports a presumption that the proceedings below are free from error, and it is the duty of the appellant to see that the record is properly made up and transmitted to the appellate court. *State v. Fox*, 305 N.C. 280, 287 S.E. 2d 887 (1982). Further, when no exceptions are made to separate findings of fact they are presumed to be supported by competent evidence. N.C.R. App. P. 10(b)(2). *Dealers Specialties, Inc. v. Housing Services*, 305 N.C. 633, 291 S.E. 2d 137 (1982).

Here defendant failed to except separately to any finding of fact or conclusion of law made by Judge Bowen. Neither did he include in the record the substance of the testimony presented to and considered by Judge Bowen. We therefore conclude that the findings support Judge Bowen's conclusions of law which in turn support his ruling denying defendant's motion to suppress.

[8] Defendant next assigns as error the trial judge's action in raising defendant's bond from $140,000 to $500,000 after the State had rested and defendant had examined the witness Edell Willis.

The witness Edell Willis, upon the advice of counsel, exercised his fifth amendment rights and refused to answer any questions pertinent to this case on the ground that it might incriminate him. When the jury was released for the day, the prosecutor, noting that in previous hearings it became evident that a large part of defendant's defense would rest upon the testimony of Edell Willis, asked the court to reconsider bond. Whereupon, the trial judge noted that during the course of the trial he had had problems with defendant and that defendant had willfully violated the instructions of the court. Further, the trial judge expressed doubts that defendant would show up and as to whether there was a sufficient bond. He further explained his action for raising defendant's bond as follows:

[D]uring the trial and in large measure because of defendant's misconduct in the presence of the 15 jurors in this case, the Court had him taken into custody last Friday and after repeated admonitions to him—and I'm satisfied after counsel's repeated admonitions to him—to behave himself and not, shall we say as you put it, Mr. Loflin, attempt to indirectly communicate with the jurors.

After a case is before the superior court, a superior court judge may modify the pretrial release order of a magistrate, clerk, or district court judge, or any such order entered by him at any time before defendant's guilt has been established in superior court. N.C.G.S. § 15A-536 imposes additional restrictions upon the modification of pretrial release orders after a defendant has been convicted in superior court. N.C.G.S. § 15A-534(e)(2) (1983). Further, in addition to modification of a bail bond, a trial judge has discretionary power to order a defendant into custody during the progress of a trial. *See State v. Norman*, 8 N.C. App. 239, 174 S.E. 2d 41 (1970).

Here the trial judge noted defendant's misconduct in the presence of jurors and the court. He was aware that defendant faced serious punishment if convicted and that defendant had just lost the aid of one of his prime witnesses. In light of these circumstances, the court expressed doubt as to the sufficiency of the bond to bring defendant to court until a final determination of his guilt or innocence. Under these circumstances, we hold that the trial judge did not err by increasing defendant's bond during the course of the trial.

[9] Neither do we find error in the court's denial of defendant's motion for a mistrial because a juror or jurors saw defendant in handcuffs or in custody of an officer after he was in custody because of his failure to post the bond ordered by Judge Brannon. Admittedly the general rule is that a defendant is entitled to appear in court free from all bonds and shackles. However, this rule is subject to the exception that a trial judge, in the exercise of his sound discretion, may require an accused to be shackled when it is necessary to prevent escape, to protect others in the courtroom, or to maintain an orderly trial. *State v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976).

In instant case defendant was not shackled during the course of the trial but was routinely handcuffed when carried to and from the jail. There was evidence that a juror had inadvertently seen defendant handcuffed and that others may have seen him in the custody of an officer. When defense counsel moved for a mistrial, the trial judge conducted an extensive hearing and found no misconduct or prejudice to defendant. He thereupon denied the motion for mistrial. The record discloses that the trial judge then advised defense counsel that he would be willing to inquire of all the jurors if they saw anything amiss. Defense counsel indicated that he desired no further inquiry.

We therefore conclude that the trial judge correctly denied defendant's motion for a mistrial.

In his final assignment of error defendant argues that the trial judge improperly found the following aggravating factors:

a. The defendant had specific intent to sell the heroin that he possessed and manufactured in these cases; and

b. The defendant has a bad character and reputation for trafficking in drugs and handling stolen goods.

Before reaching the merits of defendant's arguments we must deal with the State's contention that the subject matter of defendant's argument is not included in an assignment of error in the record. In assignment of error 15 defendant stated that "[t]he trial judge erred in his utilization of a 1946 conviction, opinion statements by police officers and other improper factors in determining aggrevating [sic] factors during the sentencing of the defendant." Though more detail would be helpful, we hold that this assignment of error is sufficient to state the "basis upon which error is assigned. . . ." N.C.R. App. P. 10(c).

The State next argues that the punishment for violations of N.C.G.S. § 90-95(h)(4)(c) is not covered by the Fair Sentencing Act. The State contends that the minimum punishment of a 45-year prison term and a fine of $500,000 so far exceeds the presumptive sentence of 15 years for a Class C felony that it has the effect of removing this offense from the Fair Sentencing Act.

[10] Subsection (f)(1) of N.C.G.S. § 15A-1340.4 provides that, unless otherwise specified by statute, the presumptive prison

term for a Class C felony is imprisonment for fifteen years. In cases such as this one in which a statute mandates that an offender *be punished as* a felon of one of the classifications of N.C.G.S. § 15A-1340.4(f) but sets a minimum sentence greater than the presumptive sentence established for the appropriate class of felony in subsection (f), we adopt the rule set out in *State v. Morris*, 59 N.C. App. 157, 296 S.E. 2d 309, *disc. rev. denied*, 307 N.C. 471, 299 S.E. 2d 227 (1983), that the minimum sentence set out in the criminal statute becomes the presumptive sentence for purposes of sentencing under the Fair Sentencing Act. Therefore, in order to impose a sentence in excess of the minimum prescribed by N.C.G.S. § 90-95(h)(4)(c) (45 years and $500,000), it is necessary that the trial judge make proper findings of factors in aggravation and mitigation and find that the aggravating factors outweigh any mitigating factors.

[11]   We now consider defendant's argument that the aggravating factors found by the trial judge were improper.

In regard to the finding that he intended to sell the drugs defendant contends that pecuniary gain, *i.e.*, intent to sell, is inherent in the crime of possession of more than 28 grams of heroin. Where there is no evidence that a defendant was hired or paid to commit a crime it is improper for the trial court to find that he committed the offense for pecuniary gain. *State v. Abdullah*, 309 N.C. 63, 306 S.E. 2d 100 (1983). Therefore, defendant contends that the trial judge erred in finding that he intended to sell the heroin he possessed. We disagree.

Intent to sell is not an element of manufacturing, transporting, or possessing 28 grams or more of heroin. *See State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (intent to distribute cocaine is not an element of the offense of manufacturing). The reason a person possesses, manufactures, or transports the heroin is irrelevant. Therefore, the trial judge properly found the aggravating factor that defendant had the specific intent to sell the heroin that he possessed.

Lastly, we turn to defendant's argument that his bad reputation and character is not an appropriate factor in sentencing. We disagree. As the trial judge pointed out, good character and reputation is a statutory mitigating factor. We agree with him that a defendant's bad character and reputation can be a proper

nonstatutory aggravating factor. Since the evidence of defendant's bad character related in part to his activities in the illegal drug trade we hold that it does bear a reasonable relationship to the purposes of sentencing by demonstrating his increased culpability and is a proper aggravating factor. *See* N.C.G.S. § 15A-1340.3 (1983).

Defendant received a fair trial free from prejudicial error.

No error.