## G. W. CHALK & CO. v. CHARLOTTE, COLUMBIA & AUGUSTA RAILROAD COMPANY.

*Negligence—Damages—Railways— Warehousemen.*

In an action for damages against a railway company to recover the value of goods lost by the alleged negligence of the defendant, it appeared that after the arrival of the goods they were placed on a platform at the depot for the convenience of delivery to consignees, and remained there for nearly two days; notice of their arrival was given the plaintiff who paid the freight charges with full knowledge of the place of deposit, but failed to remove them on account of his inability at the time to procure the services of city draymen for that purpose, and in the afternoon of the second day they were destroyed by fire, together with much of defendant's property; *Held,*

(1) There was a delivery in law of the goods to the plaintiff consignee, which exonerated the defendant company from liability as warehousemen.

(2) The fact that the fire originated in a steam cotton compress, erected on the company's premises with its permission but not under its control, does not constitute negligence in the defendant, the permission to erect the same not being the proximate cause of the injury sustained by the plaintiff.

(*Hilliard* v. *R. R. Co.*, 6 Jones, 343, cited and approved.)

CIVIL ACTION for damages tried at Fall Term, 1880, of MECKLENBURG Superior Court, before *Seymour J.*

Judgment for plaintiffs, appeal by defendant.

*Messrs. Bynum & Grier, Hinsdale & Devereux, Walter Clark* and *T. M. Pittman,* for plaintiffs.
*Messrs. Wilson & Son,* for defendant.

SMITH, C. J. The action is to recover from the defendant company compensation for damages to one hundred barrels of flour which had been transported from St. Louis, and over its railroad from Augusta in Georgia to Charlotte in this state, and was a part destroyed and the rest injured by

fire while on the city platform at the latter terminus before removal. The flour arrived at Charlotte on defendant's train on the evening of April 14th, 1875, and was unloaded and put on the platform, the usual place for the deposit and delivery of freight to consignees, the next morning.

Notice of the arrival and of the freight charges, which were required to be paid before the removal of goods by the consignee, was conveyed on a postal card of the date of April 14th, which the general agent testifies he directed his office clerk to give on that day, but which the plaintiff, Chalk, testifies he took from the post-office on the morning of the 16th, being himself absent on the day preceding, though his two co-partners remained in the city. The company's agent also testified to his impression that a clerk or employee of the plaintiffs came to the depot and made inquiry about the flour on the day of the transfer from the cars to the platform but he certainly did call on the morning of the 16th about 8 o'clock, according to his recollection, and with a bank check paid the charges for freight in full. The city platform, containing the flour, for convenient delivery and removal, and where it was the custom of the plaintiffs and other consignees in Charlotte to receive their goods, none of whom made any exception thereto, was in width 30 feet and in length 400 feet, and built by the city upon land of the defendant, for the convenience of the cotton trade and the railroads converging at that point. This platform was not under the defendant's control, and its eastern part on the south side was connected by a gang-way with the defendant's brick and tin covered depot building, and at the west end of the platform was erected a cotton press, moved by steam, and 350 feet distant from the depot building on land of the defendant, and put up with its consent, but not under its control or supervision.

The plaintiff, Chalk, testifies that on being advised of the arrival of the flour, he was unable to procure transportation

from a city drayman to whom he applied, and made inef·
fectual efforts to obtain the means of removing it, and that
before the return of their clerk who had been sent to pay
the charges, he heard the alarm of fire, and the defendant's
agent fixes the hour at 2:30 p. m., on his return from din-
ner. There was a large quantity of cotton lying on the
city and N. C. Railroad company's platforms, and from this
latter place the fire was communicated to the defendant's
cars on the tract by the depot, and thence to its depot build-
ing, which was entirely consumed. A very high wind was
blowing from the southwest, and the fire spread with such
rapidity that it was impossible to arrest its progress after its
commencement, until the damage was done to the plain-
tiffs' goods. The cotton press was built to compress cotton
for railroad transportation, the different companies paying
therefor according to certain *pro rata* rules entered into be-
tween them and connecting roads and steamship companies,
and was in operation just before the fire which came from
the direction of its location. A witness stated that his im-
pression was that the smoke-stack had no spark arrester at-'
tached to it.

A series of instructions were asked to be submitted to the
jury on behalf of the defendant, which may be condensed in
the following propositions :

1. The payment of freight with a knowledge of the situ-
ation of the flour is a delivery in law and exonerates de-
fendant from further liability for loss.

2. Notice to the consignee of the arrival of the goods is
not necessary.

3. If the plaintiff had such a notice on the 15th, the day
before the fire, reasonable diligence in removing them was
required and was not exercised.

4. If negligence can be imputed to the defendant in per-
mitting the construction and working of the compress upon

their premises, it is not the proximate cause of the injury and imposes no liability on it therefor.

5. Upon the facts proved, the defendant is not chargeable with negligence, and the burden of proof rests upon the plaintiffs in this respect.

The court charged as to the *onus probandi*, but declined to give the other instructions, and directed the jury, that the defendant's *liability as a common carrier* ceased, if not before, on the payment of freight, and thereafter their liability, if any, was that of a *warehouse-man* of whom ordinary care only is required, and this continues until the consignees have had a reasonable time after the arrival of their goods to take them away, and if it was the custom of the defendant to notify consignees of the arrival of their goods and this notice only reached the plaintiffs on the 16th and they thereafter used due diligence in attempting to get them away, and were prevented by the fire, then the defendant would be responsible for the damage; that if the platform was rendered dangerous by reason of the proximity of the compress, so that a person of ordinary prudence would not have exposed his property there, then the plaintiffs would be entitled to recover.

The directions given the jury that the liability of the defendant as a common carrier passed into that of a warehouseman at, if not before the time when the freight bill was paid if it did not then terminate by delivery and acceptance, though not subject to review in this appeal, is in our opinion a correct exposition of the law governing that class of public agencies in their relation to those whose goods they transport, and is warranted by well settled decisions in this and other states, and the rule itself reasonable and just. Chief Justice SHAW in an elaborate opinion quoted with approval by an eminent author in his work on railroads, thus announces the measure of liability of such companies: They are responsible as common carriers until the goods are removed from the cars and placed on the platform, and

if on account of their arrival in the night, or at any other time when by the usage or course of business the doors of the merchandise depot or warehouse are closed, or for any other cause, the consignee is not then ready to receive them, it is the duty of the company to store safely, under the charge of careful and competent servants, ready to be delivered, and actually deliver them when duly called for by parties authorized and entitled to receive them, and for the performance of these duties after the goods are delivered from the cars, the company are liable as warehousemen, or keepers of goods for hire. 2 Red. Railroads p. 52 § 157. So in *Hilliard* v. *Railroad Company*, 6 Jones 343, RUFFIN, J. declares that "after the goods are placed in the warehouse, the owner's interest is protected by another responsibility of the company which arises—that of a warehouseman, bound to take ordinary care of the goods. See also Whart. Neg. § 569.

Applying the principle to the facts of the present case, it will be seen that the flour placed on a platform, (as usual with others and the plaintiffs themselves theretofore, and without objection or complaint from either) accessible to the owners and convenient for delivery to them, remained there for nearly two days, and on the second, the transportation paid for with full knowledge of the place of deposit and without any suggestion of an exposure to peril, until in the afternoon they are destroyed by the fire with much property of the defendant. Wherein lies any negligence ? If what occurred is not in law a delivery to the owner so as to make future risks his own, the goods were where they would have been required to be placed had he procured the means of transportation, and the doing this in preparation for their removal, shows no want of prudence or care in the company, and the suddenness and fierceness of the advancing flames permitted no removal to a place of greater safety afterwards.

But the charge imputes a culpable carelessness and want of foresight in allowing the construction of a compress so dangerous in the vicinity of such inflammable materials as cotton, under the conditions from which the jury were left at liberty to infer a legal liability in the defendant upon that ground. There is, of course, danger from fire in the use of steam power for transportation and for the compression of cotton bales to a smaller size, and yet the public interests demand the use of it for both purposes. The compresses reduce largely the costs of carriage in the storage of a larger number of bales in the cars used in transportation. Steam cannot be dispensed with, notwithstanding the perils of its use, without great detriment to the agricultural and commercial prosperity of the country, and all that can be required is the employment of such means as are calculated to remove or reduce the perils encountered in the employment of the dangerous but most valuable agent. But this question which might arise if the owners of the compress were sued and charged with neglect in not providing their smoke-stack with a spark-arrester, or in the careless management and working of the machinery itself, is not presented in this appeal, since the permission to put it up on defendant's premises is not the proximate cause of the injury, or as it is sometimes said, there is no causal connection between them.

A negligence followed by liability to others is defined as "the judicial cause of an injury when it consists of such an act or omission on the part of a responsible person, as in ordinary natural sequence immediately results in such injury." Whar. Neg., § 73. It must be the natural and proximate consequence of the act complained of. 2 Greenl. Evi., § 256.

Measured by this rule, the damage is too remotely connected with the imputed negligence to expose the defendant

to the action. The redress, if any, must be pursued against the owners of the compress.

As upon ascertained facts, negligence is a question of law to be declared by the court, in which the defendant was entitled to the instruction that the evidence disclosed no neglect in the company for which it is liable.

This view is fully sustained by the ruling in a case not dissimilar in the facts to which our attention has been called. *Knapp* v. *Curtis*, 9 Wend., 60.

There is error, and must be a new trial. Let this be certified.

Error.                                                        *Venire de novo.*

NOTE.—The decision in *Erie City Iron Works* v. *R. & D. R. R. Co.*, at this term, is the same as in above case.