## C. ALEXANDER v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 March, 1907).

1. **Railroads—Penalty—"Transport."**—A statute (Revisal 1905, sec. 2632) imposing a penalty upon a railroad company omitting or neglecting to "transport" goods, merchandise, etc., within a reasonable time, does not include within its meaning the delivery thereof, delivery necessarily requiring the concurrence of the consignee and having a distinctive meaning.

2. **Penalty Statutes—Construction.**—A statute imposing a penalty must be strictly construed in accordance with the meaning of the words employed, and must not be extended by implication or construction when the act complained of does not fall clearly within the spirit and letter thereof.

3. **Statute—Prima Facie Case—Burden of Proof.**—When the evidence discloses that the time taken by the railroad company for transporting goods, etc., was *prima facie* reasonable as fixed by the statute, the question of reasonable time is one for the jury to measure by the statutory standard, the burden of proof being upon the plaintiff.

CLARK, C. J., dissenting.

CIVIL ACTION, heard before *Long, J.,* and a jury, on appeal from a court of a justice of the peace, at the December Term, 1906, of the Superior Court of MARTIN County, to recover a penalty provided in section 2632 of Revisal 1905. Verdict and judgment for plaintiff. Defendant appealed.

This action was begun before a justice of the peace by summons "for the non-payment of the sum of twenty-seven and 50-100 dollars due by penalty as provided in section 2632, Revisal of 1905, and demanded by said plaintiff." From a judgment for plaintiff in the Superior Court, defendant appealed. The following issues were submitted to the jury:

1. Did the defendant receive the goods for shipment, as alleged, at Jamesville, consigned to plaintiff, on 10 August, 1906?

2. Did the defendant fail to transport and deliver said goods within a reasonable time?

3. Did defendant's agent, on 14 August, inform the plaintiff that the goods had not arrived, and marked them "short"?

4. When did the defendant deliver the goods?

The jury, by consent, responded affirmatively to the first and third issues, and to the fourth, "20 August, 1906." Defendant objected to the second issue, and tendered, in lieu thereof, the following: "Did the defendant fail to transport said goods within a reasonable time?"

The testimony tended to show that the goods, a crate of bottles and a barrel of bottles, were delivered to defendant at Jamesville to be shipped to plaintiff at Williamston, N. C. On 14 August, defendant delivered to plaintiff "one crate of bottles and one barrel of bottles, and he paid the freight, sixteen cents. When plaintiff opened the packages he found that they were not his property. He notified defendant's agent on 17 August. He said that they belonged to some one else; looked and could not find plaintiff's goods, although they were on the defendant's platform at Williamston on 14 August. Defendant's agent, by mistake, marked the freight bill "short" on 17 August. He delivered the goods to plaintiff on 20 August. Jamesville and Williamston are on defendant's road and about eleven miles apart, there being no intermediate stations. Plaintiff made demand of defendant's agent for the goods prior to 20 August, who told him that they were not there; looked, and could not find them.

Defendant moved for judgment upon the entire evidence. Motion denied. Defendant requested his Honor to instruct the jury: "If they should find from the evidence that the goods in question were in fact transported from Jamesville, N. C., to Williamston, N. C., the point of destination, within

a reasonable time, although the defendant's agent told the plaintiff the goods were not there on 14 August, and marked the freight bill 'short,' then the plaintiff is not entitled to recover in this action." The instruction was refused, and defendant excepted.

His Honor, so the record states, "told the jury, in substance, that it was not only the duty of the defendant to transport the goods within a reasonable time, but also their duty to deliver them within a reasonable time.

Defendant excepted to his Honor's refusal to give the special instruction prayed, and to the submission of the second issue. From a judgment on the verdict defendant appealed.

No counsel for plaintiff.
*H. W. Stubbs* for defendant.

CONNOR, J., after stating the case: The plaintiff sues for the penalty imposed by sec. 2632, Revisal, upon any common carrier which shall "omit or neglect to transport within a reasonable time any goods, merchandise or articles of value received by it for shipment," etc. The words "reasonable time," for the purpose of fixing the standard of duty, is defined to be "the ordinary time required for transporting such articles between the receiving and shipping stations." A delay of two days at the "initial point," etc., is not to be charged against such transportation company as unreasonable and shall be held *prima facie* reasonable, and a "failure to transport within such time shall be held *prima facie* unreasonable."

We had occasion in *Walker v. Railroad,* 137 N. C., 163, to consider and, in so far as was necessary, upon the facts there presented, construe the statute. *Mr. Justice Walker,* writing for the majority of the Court, said: "The word

'transport' does mean to carry or convey from one place to another, but it also means to remove—and this is one of the primary significations, according to the lexicographers." While *Mr. Justice Douglas* wrote a dissenting opinion upon other phases of the case, in which the *Chief Justice* concurred, he concurs in the construction put upon the word "transport," in so far as it is involved in the present appeal, saying: "It is from the Latin word *'transportare'* compounded from the words *'trans,'* meaning over or beyond, and *'portare,'* to carry. It does not mean simply to remove from one place, but includes also the idea of carrying to another place." For the purpose of disposing of this appeal, the adoption of either definition of the word "transport" leads us to the same conclusion. The Supreme Court of the United States, in *Gloucester Ferry Co. v. Penna.,* 114 U. S., 203, says: "Transportation implies the taking of persons or property at some point and putting them down at another." Webster defines the word transport thus: "To carry or bear from one place to another; to remove; to convey; as to transport goods; to transport troops." International Dict., 1530; Black's Law Dict., 1184. His Honor was of the opinion that the word included delivery; hence, he submitted the second issue directed to the inquiry whether the defendant did, within a reasonable time, "transport and deliver" the goods, and, in accordance with that view, instructed the jury that it was the duty of the defendant not only to transport the goods, but to deliver them within a reasonable time. The exception to this ruling presents the question upon which the decision of this appeal depends. It is undoubtedly true that the common law imposes the duty upon every common carrier to receive, transport and deliver all goods, merchandise, etc., offered for that purpose, and that for a failure to do either it is liable to an action for damages. For failing

to *receive* goods, a penalty is imposed by section 2631, Revisal.

We find, upon an examination of the authorities, that the word "deliver" is of entirely different origin and signification from the word "transport." To "transport" an article, it must be received and retained by the person charged with the duty; whereas, to "deliver," the person entrusted with the possession of it must part with it—hence, the word is compounded of *de* and *liberare*, "to set free; to set at liberty; to give over"; this of course importing that the duty of transporting has been discharged, completed, because the *delivery* can only be made after the *transportation* is complete. Webster's Inter. Dict., 386; Century Dict., Vol. II. "A delivery of an article consists in handing the article to the person to whom delivery is made." *Bellows v. Folsom,* 27 N. Y. Super. Court (4 Rob., 43). "As between carrier and consignee, delivery implies the mutual acts of the two." *United States v. McCreary,* 11 Fed., 225.

Again, it is evident that the Legislature had in mind the distinction between the duty to "transport" and to "deliver," because the former is the act of the carrier without the intervention or aid of the consignee; whereas, the latter cannot be accomplished without the concurrence of the consignee. A person upon whom the duty to transport is imposed is the sole actor; whereas, the duty to deliver necessarily involves the acceptance by the person to whom delivery is to be made, or, as said by the Court, it "implies the mutual acts of the two." The idea of parting with the possession and control of an article or paper-writing as an essential element in the delivery of it is illustrated in many instances—as in the delivery of a deed which is separate and distinct from signing and sealing, but equally essential to its validity. *Daniel, J.,* in *Moore v. Collins,* 15 N. C., 388, says: "A deed may be

144—7

delivered, by words, without any act of delivery by the grantor, as if the writing sealed lieth upon the table, and the feoffer or obligor saith to the feoffee or obligee, Go and take up the said writing, etc. * * * The words must amount to an authority or license, in the person addressed, to take possession of the deed, and a reception of the instrument by the person spoken unto must follow the speaking of the words.. Whenever the words evidence an assent in the feoffer or obligor to part with the writing as a deed, and, at the same time, evidence a willingness that the person spoken unto should take the writing as a deed, and a reception of the writing by the person addressed follows the speaking, then the words amount to a delivery." The Legislature could not have intended to impose a penalty upon the carrier for not doing something which necessarily involved the presence and acceptance by the consignee or his agent. If the consignee live in the country, or at some distance from the depot, or for any cause fails to call for the goods within the four days, it cannot be that the carrier should be liable to a penalty for not delivering, when there was no person to whom delivery could be made. It is for this reason that upon the completion of the transportation, that is, the carrying from the point of shipment to the destination, he must, when called for, deliver. If not called for, a new duty, with different measure of liability, is imposed upon the carrier. He must place the goods in a warehouse or other proper place and care for them until called for—he ceases to be a carrier and becomes a warehouseman. *Hilliard v. Railroad,* 51 N. C., 341, wherein *Ruffin, J.,* says: "Naturally, a contract to carry goods from one point of a railroad to another point, on the same road, is fulfilled by the transportation of them to the point of destination and having them there in a state ready to be delivered. * * * Con-

sidering the unloading upon arrival and, in the absence of the consignee, the depositing in the warehouse as parts of the transportation, the Court sees no reason why, ordinarily, the liability as carrier should not terminate with the transit of the goods. After the goods are placed in the warehouse the owner's interest is protected by another responsibility of the company which arises—that of a warehouseman, bound to take ordinary care of the goods." The Court held that the carrier was under no legal liability to give the consignee notice of the arrival of the goods. *Chalk v. Railroad,* 85 N. C., 423.

We note that in section 2641 the Legislature was advertent to the distinction between the words "transport" and "deliver," and imposed upon the carrier the duty to "deliver," etc.

It would seem clear that the duty to carry—transport—is essentially different from the duty, at the termination thereof, to deliver to the consignee. It is true that upon the receipt of the goods, the law imposes both duties—but to be performed in their own order. If the question were in doubt whether the word "transport" as used in the statute included the word "deliver," the well-settled canons of construction of penal statutes make it our duty to resolve the doubt for the defendant.

Applying the rule by which courts should be guided in the construction of a penal statute, *Bynum, J.,* in *Coble v. Shaffner,* 75 N. C., 42, says: "It cannot be construed by implication, or otherwise than by express letter. It cannot be extended by even an equitable construction, beyond the plain import of its language. If, therefore, even the intent of the Legislature to embrace such a case was clear to the Court from the statute itself, we cannot so extend the act, because such a construction is beyond the plain import of the language used."

It is said that we should see, in the statute, the evil intended to be remedied, and so construe it that such evil may be repressed and the remedy advanced. This is undoubtedly the general rule in the construction of statutes. This suggestion has been heretofore made and disposed of by the same learned Judge. "In construing a penal statute, we are not allowed, as in the case of those which are not penal, to look at the motives or the mischief which was in the legislative mind. The rule is peremptory, that the case must fall within the plain language of a penal statute before the penalty can attach." *Ib.*, 44. As was said by *Mr. Justice Ashe* in *Whitehead v. Railroad,* 87 N. C., 255: "The rigid rules of the common law with reference to the liability of common carriers should not be applied to a case involving the violation of a penal statute." Such has been the uniform rule of construction from the earliest times.

It would seem that such an elementary proposition would neither require nor justify the citation of authority, but a proper deference to the opinion of our brethren who differ from us makes it proper to re-examine the foundations of the law. In *Jenkinson v. Thomas,* 4 Tenn. Rep., the *Chief Justice* said: "If we had the power of legislation perhaps we should think it proper to extend the penalties created by the statute * * * ; but as it is our duty to expound and not to make acts of Parliament, we must not extend a penal law to other cases than those intended by the Legislature, even though we think they come within the mischief intended to be remedied." Again, one of the sages of the law admonishes us that "A penal law shall not be extended by equity; that is, things which do not come within the words shall not be brought within it by construction. The law of England does not allow of constructive offenses, or of arbitrary punishments. No man incurs a penalty unless the act which sub-

jects him to it is clearly within both the *spirit* and the *letter* of the statute imposing such penalties. If these rules are violated, the fate of accused persons is decided by the arbitrary discretion of Judges and not by the express authority of the laws." Potter's Dwarris Statutes, 247. It would be a work of supererogation to cite authorities and the multitude of decided cases to show both the wisdom and uniformity of this rule of law. We dare not depart from it, even by the suggestion involved in Lord Macaulay's brilliant rhetoric. When courts are called upon to declare and enforce well-settled legal principles sanctioned by the wisdom of the sages of the law and the experience of the ages, they may not take notice of the parties to the controversy. We must declare the law as in our conscience and judgment we believe it to be. We dare not, without violating both, do otherwise, no matter whether the parties be natural persons or corporations. The Legislature has used words which we find have a clear, well-defined meaning; we know of no other way of ascertaining what it meant.

It is conceded that the duty to deliver does not arise until the article is called for; but it is contended that by refusal or failure to do so, when demanded, the penalty is incurred. It is undoubtedly true that a failure to deliver when demanded subjects the carrier to an action for damages, it may be, as for a conversion making him liable for the value of the article, but this liability is entirely independent of any statutory duty. We are not advised of any statute imposing a penalty for this breach of duty. Possibly the evil suffered by the public for failure of carriers to transport goods within a reasonable time, which attracted the attention of the Legislature and induced it to enact the statute upon which this action is founded, did not extend to failure to deliver, after the transportation was complete, and it deemed the common-

law remedy sufficient protection to the consignee. It is apparent that a statute imposing a penalty for failure to deliver would be guarded with provisos in respect to demand, etc. However this may be, it is a question for the law-making department to deal with. We simply give to the language used in this statute its ordinary, usual and well-defined meaning, in holding that the duty to transport does not include the duty to deliver. They are separate and distinct duties imposed by law. For a failure to perform the first in a reasonable time, a penalty is imposed; for a failure to perform the second, the consignee has his action for damages.

The testimony showed that the goods were received for shipment 10 August, 1906, and were at Williamston, their destination, on 14 August. The statute declares that *prima facie* this was a reasonable time for transportation. It will be observed that the standard fixed by the statute by which to measure reasonable time is the ordinary time required for carrying, etc. This distance between Jamesville and Williamston is stated to be eleven miles. Whether the goods were transported within a reasonable time, measured by the statutory standard, is a question for the jury, the burden upon the facts found being with the plaintiff to show that the time was unreasonable. The question in controversy was whether the goods were transported within a reasonable time. In refusing to submit an issue directed to that question and in instructing the jury, as set out in the case on appeal, there was error, for which defendant is entitled to a

New Trial.

CLARK, C. J., dissenting: It is found by the jury, by consent, that the goods were received by the defendant at Jamesville, N. C., 10 August, 1906, and were not delivered to the consignee at Williamston till 20 August. It is admitted that the goods were applied for by the consignee on 14

August and again on 17 August. Williamston is only eleven miles from Jamesville, and there is no intermediate station. This is an appeal from a judgment for a penalty of $20 for unreasonable delay under Revisal, sec. 2632. The jury found that there was unreasonable delay in getting the goods from Jamesville to the plaintiff at Williamston. It would not seem that this conclusion could be reasonably controverted. The defense is that the goods really reached Williamston 14 August and were in the warehouse of the defendant, but that the agent of the defendant there delivered to the consignee on 14 August a different package, and on 17 August erroneously told the consignee that the goods had not come; but finding on 20 August that the goods were there, so informed the consignee, who came that day and got them. The defendant contends that it did not fail to "transport" the goods in a reasonable time, because in fact they got to Williamston by 14 August, though it denied them to the consignee till 20 August.

The defendant is surely "sticking in the bark." There is no technical mystery in the word "transport." It simply means "to carry." The contract which the defendant made by the bill of lading was not merely to carry the goods from Jamesville to Williamston, but from the consignor at Jamesville to the consignee at the defendant's station at Williamston. It includes, according to the due and recognized course of dealing of common carriers and by the very terms of the contract, taking the goods from the consignor at the defendant's station at Jamesville and their delivery to the consignee at the defendant's station at Williamston. Nothing else would be a discharge of the contract in the bill of lading to transport the goods from "A" at one point to "B" at another. It is not contended by the consignee that the goods should be delivered to him elsewhere than at the defendant's

warehouse in Williamston; but there was certainly no compliance (till 20 August) with the contract to deliver to the consignee, for he applied at the defendant's depot at that place and was refused the goods. They are not carried or transported to him at Williamston when on his application at the proper place he is denied them.

The "carrying" or "transporting" of goods within a reasonable time is a common-law duty. The Revisal, 2632, simply enforces the discharge of that duty by the penalty therein provided. The common-law duty of transporting goods to the consignee was not performed if upon application of the consignee at the office of the carrier the goods are not delivered to him.

It is a matter of vital importance to the public that carriers shall perform their common-law duty of carrying goods to consignees without unreasonable delay. Both Congress and the State Legislatures have been engaged in framing statutes to regulate the conduct of common carriers, by prohibiting excessive charges and prohibiting discrimination and delays in the discharge of their duties to the public, and in other respects. It cannot be a reasonable and just construction of Revisal, sec. 2632, that the Legislature meant that this railroad has discharged its contract and legal duty to carry these goods to the consignee at Williamston by carrying them to Williamston, but refusing them to the consignee when he applied for them. That is to "make the law of none effect." It is to "keep the word of promise to the ear, but break it to the hope."

It was probably negligence, and not intentional, that the agent at Williamston denied that the goods were there. So it would have been if the goods had laid at Jamesville. It was not necessary that unreasonable delay in transporting the goods to the consignee should be wilful. That there is an-

other statute, Revisal, sec. 2631, compelling the carrier under a penalty to receive goods when tendered, in no wise takes from the purview of the contract in the bill of lading the duty of transporting them thereafter, and carrying them not merely to Williamston, but delivering them to the consignee at that place, when demanded by him. The goods do not necessarily go into the carrier's warehouse at the place of destination, but are often delivered from the car or the platform. The defendant's agent at the destination is as much a part of the "transporting" force as the shipping clerk at the place of origin. Delay due to the negligence of either is the negligent delay of the carrier.

This is a remedial statute. It should be given the plain, every-day, well-understood meaning of the words which are used to guarantee the enforcement of the duty of the railroad company to carry the goods to the consignee when applied for by him at the place of destination. It is said by Macaulay in his History of England (ch. 12), quoting a current statement, that an ingenious lawyer could "drive a coach and six through an act of Parliament." However that may have been as to the lawyers of England in the courts of that day, it is not true in the courts of this State, whose earnest object, in this case as in all others, is to ascertain and effectuate, not defeat, the intent of the Legislature, especially as to remedial legislation widely affecting the business of the State. The difference between the members of the Court is as to what was the relief which the Legislature meant to guarantee shippers by this statute. It could hardly have deemed that it would be any relief to the public to require the common carrier merely to transport the goods without unreasonable delay to its warehouse at the destination, while denying their possession to the consignee when demanded. The goods are

still unreasonably delayed as long as delivery of them to the consignee is refused without cause. What can it matter to the consignee where the goods are detained, so long as they are in fact unreasonably detained by the carrier and refused to him? Was it the object of the statute to prohibit merely unreasonable delay in carrying the goods to the destination, or to secure their prompt receipt by the consignee at the destination?

The object of the Court being to search for and ascertain the intent of the Legislature in enacting Revisal, sec. 2632, it will throw light upon that investigation to note that in section 2641 in the same subchapter it is provided that when only a portion of the shipment has reached the place of destination, "the carrier shall be required to deliver to the consignee such portion of the consignment as shall have been received, upon payment or tender of the freight charges due upon such portion." It is not controverted here that the freight was paid, and if the transportation of part of the consignment includes delivery to the consignee, there must be a violation of the statute giving a penalty for unreasonable delay, when all of the goods are received and none are delivered when (as here) the freight is paid and the goods are demanded.

Besides, section 2633 of the same subchapter provides, "upon payment or tender of the amount due on any shipment which has arrived at its destination, * * * such common carrier shall deliver the freight in question to the consignee or consignees." These sections, 2633 and 2641, show that a delivery of goods upon demand is a constituent element in discharging the duty of transporting the goods to the consignee, an unreasonable delay to do which justly subjected the carrier to the small penalty of $20 here recovered for taking ten days to carry this consignment eleven miles from the con-

signor at one station to the consignee at the next station upon the same road, there being no station between. If the statute cannot be enforced because the defendant's negligence and delay in getting the goods from the consignor to the consignee occurred after they reached the defendant's station at Williamston instead of before, then the law as thus construed is a very defective relief to the public from the evil intended to be remedied, and gives to any carrier free hand to destroy the business of any consignee, if disposed to discriminate against him.

It may be noted that the General Assembly, by chapter 461, Laws 1907, just enacted (8 March), has provided that Revisal, sec. 2632, under which this action was brought, "shall be construed to require the delivery at destination within the time specified."