STATE OF NORTH CAROLINA v. ERIC WAYNE OUTLAW

No. 896SC203

(Filed 7 November 1989)

**1. Narcotics § 1.3 (NCI3d) — transportation of narcotics — use of public street not required**

An offense of felonious transportation of controlled substances is not limited to a conveyance on a public street or highway.

**Am Jur 2d, Drugs, Narcotics and Poisons §§ 40 et seq.**

**2. Narcotics § 4 (NCI3d) — transportation of cocaine — backing in driveway — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of felonious transportation of more than 28 grams of cocaine where it tended to show that defendant was backing his truck containing the cocaine out of his driveway when officers stopped him.

**Am Jur 2d, Drugs, Narcotics and Poisons §§ 40 et seq.**

3. **Narcotics § 4 (NCI3d)— manufacture of cocaine—proximity of packaging materials**

   The State's evidence was sufficient to support defendant's conviction of felonious manufacture of cocaine where packaged cocaine was found in a toolbox in a truck defendant was backing out of his driveway, and packaging materials were found in defendant's residence which he had just left and in defendant's garage.

**Am Jur 2d, Drugs, Narcotics and Poisons §§ 40 et seq.**

APPEAL by defendant from *Friday, Judge.* Judgment entered 23 June 1988 in Superior Court, HERTFORD County. Heard in the Court of Appeals 1 September 1989.

Defendant was tried and convicted for possession of marijuana with intent to sell, felonious transportation of more than 28 grams of cocaine, felonious manufacture of more than 28 grams of cocaine and felonious possession of more than 28 grams of cocaine. These charges arose after the defendant's estranged wife, Sandra Outlaw, contacted Special Agent David J. Wooten of the State Bureau of Investigation (SBI).

At trial, Agent Wooten testified that on 26 January 1988 at approximately 5:00 a.m., he was called by Mrs. Outlaw who informed him that she had fought with her husband on the night before and that she thought her husband was going to kill her when he returned. Mrs. Outlaw had previously spoken to Agent Wooten several times between May 1986 and July 1987 concerning her husband and her suspicions about him.

Agent Wooten testified that during his conversation with Mrs. Outlaw she agreed to testify in court. After this, Mrs. Outlaw called Agent Wooten and told him that she had seen cocaine in their house and that it was kept in a locked red tool box to which only the defendant had a key. After this phone call, Agent Wooten called his assistant supervisor in Greenville.

Approximately fifteen minutes later, Mrs. Outlaw called Agent Wooten and urged him to come immediately. Agent Wooten then called Agent Ransome and Deputy Sheriff Twine and asked them to meet him at the Outlaw residence.

STATE v. OUTLAW

[96 N.C. App. 192 (1989)]

As Agent Wooten approached defendant's residence, he saw defendant's truck backing out of the driveway. He concluded that the defendant was backing out because he saw "the white lights, the reverse lights" on before seeing the defendant's brake lights come on. At that time, Agent Wooten put on his blue lights and defendant pulled his truck back up towards the house. Defendant got out of the truck and Agent Wooten introduced himself and the other officers. Defendant was then searched and patted down. Agent Wooten did not find any weapons.

Agent Wooten testified that at that time, Mrs. Outlaw came out of the house. She exchanged words with defendant and told the officers that the red tool box was in the truck. Agent Wooten said he then questioned defendant about the contents of the red tool box. He said that defendant replied, "[w]hat red box." Agent Wooten responded "[t]he red box that's on the truck seat," and then defendant replied, "[d]ope." Defendant then explained that his wife was selling the dope and that he was taking it away from the house. Agent Wooten testified that Mrs. Outlaw denied that allegation and said she could not even get in the box. When questioned, defendant denied having a key and would not tell what kind of dope was in the box. Agent Wooten secured the red tool box and put it in his car.

After another officer arrived, Agent Wooten then took defendant into custody and searched him. Agent Wooten then went to the house to use the telephone and apprise Mrs. Outlaw of defendant's arrest. Mrs. Outlaw invited Agent Wooten into the house and told him about built-in hidden compartments within the house and a hidden safe. While using the telephone in the kitchen, Agent Wooten noticed on the table a plastic bag of "brownish green plant material that appeared to be marijuana." Agent Wooten seized the plastic bag and its contents and left the premises leaving Officers Ransome and Twine behind.

Agent Wooten obtained a search warrant to search defendant's residence, truck, red tool box, and garage as well as an arrest warrant for defendant based on possession of the bag of marijuana. Accompanied by Agent Ransome, he served the search warrant on defendant.

Using one of the keys seized from Mr. Outlaw, Agent Wooten opened the red tool box and found seven plastic bags which contained white powder and one empty plastic bag. Some of the bags

were labeled by weight. He also found a card with the combination to the safe. Agent Wooten then searched defendant's residence and found some inositol, smoking screens, a plastic film container, two plastic bag corners, electronic scales and three straws that had been cut, some of which had white residue on them. In the master bedroom, Agent Wooten found triple beam and postal scales, a small pipe, and three bags of marijuana in an ice bucket. In the safe, the officers found money and a plastic bag containing white powder. The officers finally searched the garage where they found plastic bags, inositol, a pipe, and a plastic grinder in a desk drawer that had been nailed shut. In a file cabinet and in plastic bags in a garbage can, the officers found what appeared to be marijuana. Based on the contraband found and seized from the red tool box and the home, defendant was indicted.

Attorney General Thornburg, by Assistant Attorney General Francis W. Crawley, for the State.

Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender Teresa A. McHugh, for the defendant-appellant.

EAGLES, Judge.

Defendant assigns as error the trial judge's denial of his motion for directed verdict based on the insufficiency of the evidence to show that defendant transported cocaine. Defendant contends that the evidence at trial did not show that he transported cocaine because his truck never left his property. The defendant argues that at most the evidence showed that he attempted to transport cocaine.

"Defendant's motion to dismiss must be considered in light of all the evidence introduced by the State as well as that introduced by defendant." State v. Perry, 316 N.C. 87, 95, 340 S.E.2d 450, 456 (1986), citing G.S. 15-173 (1983), G.S. 15A-1227 (1983). "Thus the question presented is whether upon consideration of all the evidence, whether competent or incompetent, in the light most favorable to the State, there is substantial evidence that the crime charged in the bill of indictment was committed and the defendant was a perpetrator of that crime." Id. at 95, 340 S.E.2d at 456, citing State v. Riddle, 300 N.C. 744, 268 S.E.2d 80 (1980); State v. Scott, 289 N.C. 712, 224 S.E.2d 185 (1976).

STATE v. OUTLAW

[96 N.C. App. 192 (1989)]

Initially, we note that G.S. 90-95(h)(3) (Supp. 1988) provides that "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof . . . shall be guilty of a felony, which felony shall be known as 'trafficking in cocaine. . . .' " The defendant argues that the evidence was insufficient to show that he transported cocaine.

The word "transports" has not been defined in the North Carolina Controlled Substances Act, G.S. 90-86 *et seq.*, or in any case discussing whether controlled substances were in fact transported. However, we note that the meaning of the word "transportation" has been discussed within the context of alcoholic beverages and common carrier cases.

In *State v. Welch*, 232 N.C. 77, 59 S.E.2d 199 (1950), a case involving transporting intoxicating liquor in a vehicle, our Supreme Court stated that "[t]he word 'transport' means to carry or convey from one place to another." *Id.* at 81, 59 S.E.2d at 202, citing *Alexander v. R.R.*, 144 N.C. 93, 56 S.E. 697; *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 43 S.Ct. 504, 67 L. Ed. 894 (1922). "Hence, a person transports liquor when he carries or conveys it from one place to another on his person, or in some vehicle under his control, or in any other manner." *Id.*, 59 S.E.2d at 202-3.

On the other hand, *Alexander v. R.R.*, 144 N.C. 93, 56 S.E. 693 (1907) involved the transportation of goods by a common carrier within a specified time period. In *Alexander*, the court stated that transportation "did not mean simply to remove from one place, but includes also the idea of carrying to another place." *Id.* at 96, 56 S.E. at 698.

The United States Supreme Court in *Cunard Steamship Company v. Mellon*, 262 U.S. 100, 43 S.Ct. 504, 67 L. Ed. 894 (1922), determined that "transportation comprehends any real carrying about or from one place to another." *Id.* at 122, 43 S.Ct. at 506, 67 L. Ed. at 901. *Cunard* involved suits brought by steamship companies who operated passenger ships between this country and foreign ports. The companies sought exemption from certain provisions of the National Prohibition Act. In order to determine the rights of the parties under the 18th Amendment, the court addressed the meaning of the word "transportation." In defining transportation, the court said that "[i]t is not essential that the carrying be for hire, or by one for another; nor that it be incidental

to a transfer of the possession or title. If one carries in his own conveyance, for his own purposes, it is transportation no less than when a public carrier, at the instance of a consignor, carries and delivers to a consignee for a stipulated charge." *Id.*, 43 S.Ct. at 506-7, 67 L. Ed. at 901.

[1] Defendant has cited *State v. Wells*, 259 N.C. 173, 130 S.E.2d 299 (1963), and The Beverage Control Act of 1933 for the proposition that under alcoholic beverage laws transportation means to convey on a public street or highway. He states that this same limited definition should be applied to transportation of controlled substances.

We note that neither *Wells* nor The Beverage Control Act of 1933 establishes that movement into the public sphere is a prerequisite to charging someone for unlawful transportation. First, *Wells* only mentions public streets or highways in the wording of the warrant. In *Wells*, our Supreme Court never articulated a definition for transportation and did not imply that transportation could only occur if conveyed within the public sphere. Finally, unlike the broad prohibitions against transporting controlled substances contained in the North Carolina Controlled Substances Act (Article 5, Chapter 90), The Beverage Control Act of 1933, 1933 S.L. Ch. 319, by its own terms merely deals with the regulation of alcohol if it is transported over the public highways.

[2] Here, we believe that it is correct to view transportation as "any real carrying about or movement from one place to another." 262 U.S. at 122, 43 S.Ct. at 506, 67 L. Ed. at 901. Agent Wooten testified that defendant was in his truck and the truck's white "backup" lights were illuminated indicating that the defendant was in the process of backing out of his driveway. The defendant would have completed backing out of his driveway but for Agent Wooten's arrival with his blue light flashing. Moreover, defendant admits in his brief that he was in fact backing out of his driveway before Agent Wooten stopped him. He admits in his brief that he was taking the red tool box which contained "dope" from the house to the truck and in the truck to the end of the driveway. This is an admission of transportation of controlled substances. Accordingly the evidence of defendant's acts was sufficient to sustain a charge of felonious transportation of cocaine.

[3] Next, the defendant assigns as error the trial judge's denial of his motion for directed verdict on the grounds that there was sufficient evidence to show that the defendant manufactured cocaine.

STATE v. OUTLAW

[96 N.C. App. 192 (1989)]

Defendant contends that the State failed to show that he manufactured the cocaine that was seized. "When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Cutler*, 271 N.C. 379, 383, 156 S.E.2d 679, quoting *State v. Rowland*, 263 N.C. 353, 139 S.E.2d 661 (1967).

The defendant recognizes that "this Court has held that there was sufficient evidence of manufacturing where the instruments of manufacture are found together with cocaine which was apparently manufactured." *See State v. Muncy*, 79 N.C. App. 356, 339 S.E.2d 466, *disc. rev. denied*, 316 N.C. 736, 345 S.E.2d 396 (1986); *State v. Rich*, 87 N.C. App. 380, 361 S.E.2d 321 (1987); *State v. Brown*, 64 N.C. App. 637, 308 S.E.2d 346 (1983), *aff'd*, 310 N.C. 563, 313 S.E.2d 585 (1984). However, the defendant contends that the "packaging materials were not found in sufficient proximity to the cocaine to support an inference that the defendant manufactured *that* cocaine."

In *State v. Perry*, 316 N.C. 87, 340 S.E.2d 450 (1986), the defendant also argued that there was insufficient evidence to sustain a charge of trafficking in heroin by manufacturing. *Id.* at 98, 340 S.E.2d at 457. In *Perry*, police officers observed the defendant leaving an apartment carrying a shiny, silver package, which was later found in some bushes and held 390 glassine envelopes, each containing a small amount of heroin and mannitol. After the defendant's arrest, he said that the apartment he was observed leaving belonged to his girlfriend, that he had a key and that he left a small amount of heroin under the bed. The police officers later discovered a light bill and phone bill in defendant's name with the address to the apartment that supposedly belonged to defendant's girlfriend. The officers searched the apartment and found several items that are used in packaging and repackaging heroin including mannitol, rubber gloves, boxes with empty bindles or envelopes, a strainer, album covers, aluminum foil, scotch tape, rubber bands, measuring spoons and other items. *Id.* at 92, 340 S.E.2d at 454. Our Supreme Court held that this was "ample evidence to give rise to a reasonable inference that the defendant did manu-

facture heroin by packaging the controlled substance." *Id.* at 99, 340 S.E.2d at 458.

Like the defendant in *Perry*, Outlaw had just come out of the residence where the cocaine packaging materials were found. The materials were found in the defendant's home. Since the red tool box found in defendant's possession in the truck in the driveway contained packaged cocaine and packaging materials were found in the house and garage, the evidence taken together was sufficient to support a reasonable inference on the manufacturing charge. The trial judge properly submitted the issue to the jury.

For the reasons stated, we find no error.

No error.

Judges JOHNSON and GREENE concur.