An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-915
NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

v.                                  Iredell County
                                    No. 11CRS050709
WILLIE E. MCLENDON


Appeal by defendant from judgment entered 9 January 2013 by Judge Joseph Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*
>
> *C. Scott Holmes for defendant-appellant.*


HUNTER, Robert C., Judge.


Willie E. McLendon ("defendant") appeals from a judgment entered 9 January 2013 by Judge Joseph Crosswhite in Iredell County Superior Court sentencing him to 175 to 219 months imprisonment for one count of trafficking in cocaine by transportation of 400 or more grams and one count of trafficking in cocaine by possession of 400 or more grams. On appeal, defendant argues that the trial court: (1) erred by failing to

enter findings of fact regarding the voluntariness of his consent to a vehicle search when denying his motion to suppress evidence; and (2) committed plain error by permitting law enforcement witnesses for the State to express lay opinions improperly commenting on his guilt. After careful review, we find no prejudicial error.

## BACKGROUND

The evidence presented at trial tended to establish the following facts: On 1 February 2011, Sergeant Dow Hawkins ("Sgt. Hawkins") of the Iredell County Sheriff's Office ("ICSO") stopped defendant for speeding on Interstate 77. Upon Sgt. Hawkins's request for license and registration, defendant provided Sgt. Hawkins with his valid Pennsylvania driver license and a rental agreement for the vehicle he was driving. When Sgt. Hawkins asked defendant who had rented the vehicle, he answered that his cousin had, but when asked what his cousin's name was, defendant appeared unable to recall it and said only that it was listed on the rental agreement. The rental agreement showed that the car had been rented at the Atlanta International Airport to Kimberly Trent. Defendant told Sgt. Hawkins that he was travelling to Pennsylvania from North Carolina. While polite and cooperative, defendant appeared to

Sgt. Hawkins to be nervous.

Sgt. Hawkins testified that he was inclined to issue defendant a warning citation and end the traffic stop, but as he was returning to his patrol car, defendant reminded him that they had met previously. On 25 January 2011, Sgt. Hawkins was on the scene after another ICSO officer, Sergeant Randy Cass ("Sgt. Cass"), had stopped defendant for speeding. A passenger accompanied defendant that day, and they were found to be carrying $11,000.00 in cash between them. In the course of this stop, the officers learned that the passenger had a prior federal drug conviction. However, neither defendant nor his passenger was arrested or charged with any crime, and the money was not seized.

After being reminded of the circumstances surrounding the previous traffic stop, Sgt. Hawkins contacted his supervisor, ICSO Lieutenant Chad Elliott ("Lt. Elliott"), for backup. When Lt. Elliott arrived, he and Sgt. Hawkins discussed the matter in Sgt. Hawkins's patrol car. Footage from Sgt. Hawkins's dash-mounted video camera shows that Sgt. Hawkins then asked defendant to get out of his vehicle, and while still holding onto defendant's license and rental agreement, Sgt. Hawkins requested consent to search the vehicle. Defendant consented to

the search, and Sgt. Hawkins returned defendant's paperwork to him.

Thereafter, Sgt. Hawkins and Lt. Elliott searched defendant's vehicle. A Ziploc bag containing cocaine was found concealed in a black travel bag stowed in the trunk. Personal items belonging to defendant were also found in the black bag. Defendant was then arrested for trafficking cocaine by possession and transportation.

Defendant filed a motion to suppress on 4 January 2013. Trial began on 8 January 2013 with a hearing on defendant's motion. Sgt. Hawkins, Lt. Elliott, and Sgt. Cass testified for the State in opposition to defendant's motion. The State's witnesses testified to the circumstances precipitating both stops, defendant's behavior and demeanor at both stops, unusual circumstances that occurred during both stops that prompted suspicion in the minds of the officers, and the officers' request for consent to search defendant's vehicle during the second stop. Specifically, Sgt. Hawkins testified that "after returning all of his items to him, his driver's license, his rental agreement, telling him that, you know, he could have a good day, basically, releasing him from the traffic stop, yes, I did ask for consent to search the vehicle." Defendant did not

offer the video footage from Sgt. Hawkins's patrol car or any other evidence at this hearing; rather, the video footage was admitted into evidence at trial. The trial court denied the motion to suppress by written order entered 14 January 2013. The jury returned a verdict of guilty against defendant on both counts, and he was sentenced to 175 to 219 months imprisonment. Counsel for defendant gave notice of appeal in open court.

## DISCUSSION

### I. The Motion to Suppress

Defendant first argues that the trial court erred in denying his motion to suppress. Specifically, he contends that the trial court failed to enter any findings of fact regarding the voluntariness of his consent to the vehicle search in contravention of N.C. Gen. Stat. § 15A-977(f). We find no error.

> Appellate review of the denial of a motion to suppress is limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.

*State v. Williams*, 195 N.C. App. 554, 555, 673 S.E.2d 394, 395 (2009) (internal quotation marks and citations omitted). Nevertheless, "[t]he trial court's conclusions of law are

subject to *de novo* review on appeal." *State v. Simmons*, 201 N.C. App. 698, 701, 688 S.E.2d 28, 30 (2010).

N.C. Gen. Stat. § 15A-977(f) provides that, when ruling on a motion to suppress, "[t]he judge must set forth in the record his findings of facts and conclusions of law." "The [trial court's] findings of fact must include findings on the issue of voluntariness." *State v. Johnson*, 304 N.C. 680, 683, 285 S.E.2d 792, 795 (1982). However, "the trial court does not err in failing to issue specific findings of fact when there is no material conflict in the evidence." *State v. Malunda*, __ N.C. App. __, __, 749 S.E.2d 280, 283 (2013).

Here, the trial court entered a written order denying defendant's motion to suppress which set out findings of fact and conclusions of law. However, it did not enter findings of fact pertaining to the voluntariness of defendant's consent to the search. Thus, the trial court's failure to enter such findings may only be excused if there was no material conflict in the evidence on that issue. *See Malunda*, __ N.C. at __, 749 S.E.2d at 283. "[A] material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected." *State v. Baker*,

208 N.C. App. 376, 384, 702 S.E.2d 825, 831 (2010).

Here, the State was the only party to put on evidence at the hearing on defendant's motion to suppress. Sgt. Hawkins testified that when he asked defendant for his consent to the vehicle search, "[h]is response was yeah, you can." Upon further questioning by defense counsel, Sgt. Hawkins testified as follows:

> Q: But I think you already testified that once you concluded . . . the traffic stop portion of this investigation, you gave [defendant] his things back, his items back, and . . . basically told him he was free to go, and you couldn't stop him if he didn't want to. So you already testified you concluded that much?
>
> A: I can't -- once the traffic stop is over, I can't detain him. I'm not going to hold the items from him. I'm not going to hold his driver's license. I'm not going to hold the rental agreement. I'm not going to hold those things and grill him about other avenues and ask him for consent to search. I'm going to give them back to him.
>
> Q: That's correct. The stop was over at that point for the traffic investigation, agreed?
>
> A: Yes.
>
> Q: At that point, once that was over, you then on your own said, "oh, by the way, do you mind -- would you give me consent to search?"
>
> A: Yes.

Q: And that's when you contend my client consented to search at that point?

A: He did.

Similarly, Lt. Elliott testified that: "After I started walking up to Mr. McLendon, I asked him if he would give me consent to search the vehicle. He consented to the search."

Although the video evidence defendant presented at trial does materially conflict with this testimony in that it shows Sgt. Hawkins asking for consent to search the vehicle while still holding defendant's license and rental agreement, defendant failed to present this video at the hearing on the motion to suppress. The only evidence that the trial court could have considered when it entered its findings of fact was produced by the State. Thus, because defendant failed to put on any evidence at the suppression hearing, there could not have been a material conflict in the evidence on the issue of voluntariness.

The trial court found as fact that:

> [Sgt.] Hawkins . . . returned to [defendant] the rental agreement and his driver's license . . . and asked for permission to search the vehicle. [Sgt.] Hawkins indicated that . . . [d]efendant did give him permission to search, at which time he motioned to [Lt.] Elliott who did exit the vehicle to assist in the search. [Lt.]

> Elliott did indicate that he also asked . . . [d]efendant for consent to search, and this was given as well.

These findings were supported by the State's evidence in the form of Sgt. Hawkins's and Lt. Elliott's testimony as set forth above.  Thus, because these findings are supported by competent evidence, they are binding on appeal.  *See Williams*, 195 N.C. App. at 555, 673 S.E.2d at 395.  Furthermore, these findings support the trial court's conclusion "that the . . . consent search of the car was proper."

Because defendant failed to present any evidence at the hearing on his motion to suppress, there was not a material conflict in the evidence that would have required the trial court to enter findings as to the voluntariness of defendant's consent to the vehicle search.  The trial court's findings of fact are supported by evidence presented at the hearing, and those findings support the trial court's conclusions of law. Accordingly, defendant's argument is overruled.

## II. Officer Testimony

Next, defendant argues the trial court committed plain error by permitting law enforcement witnesses for the State to express lay opinions improperly commenting on his guilt.  After careful review, we find no plain error.

We review this issue for plain error because trial counsel failed to object to the officers' testimony. *See State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or " where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* at 516-17, 723 S.E.2d at 333 (alterations in original) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

North Carolina Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 1A-1, Rule 701 (2013).  The testimony of a lay

witness is improper to the extent that it "invade[s] the province of the jury, . . . dr[a]w[ing] inferences from the evidence—a task reserved for the jury—to express an opinion as to [a d]efendant's guilt." *State v. Turnage*, 190 N.C. App. 123, 129, 660 S.E.2d 129, 133, *rev'd on other grounds*, 362 N.C. 491, 666 S.E.2d 753 (2008).

This case is comparable to *State v. Carrillo*, 164 N.C. App. 204, 209-10, 595 S.E.2d 219, 223 (2005), where a law enforcement officer testifying as a lay witness (1) offered his opinion that the defendant knew he was transporting a package of drugs and was not caught up in trafficking by mere happenstance and (2) testified regarding training he had received on how drugs are distributed and the relevance of that training to the defendant's case. The officer's testimony in both regards was found to have improperly expressed an opinion of guilt and was thus erroneously admitted. *Id.* at 210, 595 S.E.2d at 224. However, because the defendant was unable to satisfy his burden of showing that, absent the improper testimony, the jury probably would have reached a different verdict, the plain error standard was not met. *Id.* at 211, 595 S.E.2d at 224. Specifically, additional evidence at trial showed that:

> [T]he package was intercepted by the U.S. Customs agents and contained three ceramic

> turtles with a substantial amount of cocaine concealed inside. The package was mailed from a location in Mexico that U.S. Customs agents had identified as a mail origination point for cocaine sent to the United States. The package was addressed to defendant at his residence. Defendant accepted the package. It was found inside his residence minutes after he had taken possession of it. Broken pieces of similar turtles containing traces of cocaine were also found inside his apartment.

*Id.* at 210-11, 595 S.E.2d at 224.

Here, like the officer in *Carrillo*, Sgt. Cass improperly expressed his opinion as to defendant's guilt when he responded "absolutely" after having been asked by the prosecutor, "Did you consider Mr. McLendon a [drug] mule on January 25th?" Similarly, like the *Carrillo* officer's testimony regarding his training on drug distribution and its relevance to the case then at bar, Lt. Elliott's testimony regarding his training on what constitutes a "criminal indicator" and his statement that a "mountain full of [criminal] indicators" was present at the second traffic stop was also impermissible.

However, given the similarities between the present case and *Carillo* and the absence of any indication that but for this improper testimony the jury probably would have reached a different verdict, defendant has failed to satisfy the high standard of plain error. *See Carrillo*, 164 N.C. at 211, 595

S.E.2d at 224.  Even in the absence of the officers' improper testimony, the State presented evidence sufficient to convict defendant of trafficking in cocaine by possession and transportation.

"The elements the State must prove beyond a reasonable doubt to support a conviction of trafficking in cocaine . . . by possession is that defendant: '(1) knowingly possess[ed] cocaine . . . and (2) that the amount possessed was [the requisite statutory amount].'" *State v. Cardenas*, 169 N.C. App. 404, 409, 610 S.E.2d 240, 243-44 (2005) (quoting *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873 (1991)).  "Possession of a controlled substance may be actual or constructive. Constructive possession exists when a person, while not having actual possession, has the intent and capability to maintain control and dominion over a controlled substance."  *State v. Graham*, 90 N.C. App. 564, 568, 369 S.E.2d 615, 618 (1988) (internal quotation marks and citations omitted).

> An inference of constructive possession can . . . arise from evidence which tends to show that a defendant was the custodian of the vehicle where the controlled substance was found. . . . Moreover, power to control the automobile where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury.

*State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984).

"To establish . . . trafficking by transportation the State must show that defendant knowingly . . . transported . . . the requisite amount of cocaine." *State v. Lopez*, __ N.C. App. __, __, 723 S.E.2d 164, 172 (2012). "Transportation is defined as 'any real carrying about or movement from one place to another.'" *State v. Doe*, 190 N.C. App. 723, 730, 661 S.E.2d 272, 277 (2008) (quoting *State v. Outlaw*, 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989)).

> [T]o convict an individual of drug trafficking the State is *not* required to prove that defendant had knowledge of the weight or amount of [the controlled substance] which he knowingly possessed or transported. Instead, the statute requires only that the defendant knowingly possess or transport the controlled substances; if the amount exceeds [the requisite statutory amount], then a conviction for trafficking may be obtained.

*State v. Shelman*, 159 N.C. App. 300, 306, 584 S.E.2d 88, 93 (2003).

Here, while the vehicle defendant was driving was a rental vehicle that had been rented to someone other than defendant, he was nevertheless the custodian of the vehicle at the time immediately preceding the traffic stop and vehicle search. Thus, as the custodian of a vehicle found to contain cocaine,

the jury was able to infer that defendant constructively possessed that cocaine. *See Dow*, 70 N.C. App. at 85, 318 S.E.2d at 886. Further, the cocaine was found in defendant's black travel bag also containing defendant's personal possessions, indicating an intent on his behalf to exert dominion and control over the contraband, and thus also supporting an inference by the jury that defendant constructively possessed the cocaine. *See Graham*, 90 N.C. App. at 568, 369 S.E.2d at 618.

There is also ample evidence apart from the challenged testimony whereby the jury could have reached its guilty verdict on the transportation element. First, Sgt. Hawkins testified that he observed defendant travelling north on Interstate 77 before pulling him over for speeding; thereafter, cocaine was discovered in the vehicle's trunk. Based on this information, the jury could find there had been a "carrying about or movement [of the cocaine] from one place to another" and thus that defendant had transported cocaine within the meaning of the statute. *See Outlaw*, 96 N.C. App. at 197, 385 S.E.2d at 168.

Finally, the amount of cocaine exceeded the requisite statutory amount. After it was seized, the cocaine was analyzed and weighed by the ICSO crime lab. The total weight of the seized cocaine was found to be 1,374.7 grams, an amount well in

excess of the statutory threshold of 400 grams.

Accordingly, although the admission of the officers' testimony was erroneous, defendant has failed to demonstrate that this error had a probable impact on the jury, and thus, it did not rise to the level of plain error.

## CONCLUSION

We conclude that the trial court did not err by failing to enter findings of fact regarding the voluntariness of defendant's consent to the vehicle search because there was no material conflict in the evidence submitted at the hearing on defendant's motion to suppress. Additionally, we conclude that the trial court's admission of Sgt. Cass's and Lt. Elliott's improper testimony does not rise to the level of plain error.

NO PREJUDICIAL ERROR.

Judges GEER and MCCULLOUGH concur.

Report per Rule 30(e).